**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SPHERATURE INVESTMENTS LLC, | § | Case No.: 20-42492 |
| *et al.* | § | |
| | § | Jointly Administered |
| Debtors. | | |

| | | |
|---|---|---|
| SPHERATURE INVESTMENTS LLC, *et al.* d/b/a WORLDVENTURES HOLDINGS, LLC[1] | § § § § | |
| Plaintiffs, | § § | Adversary No. 21-04058 |
| vs. | § § | |
| Kenneth E. Head, | § § | |
| Defendant. | § | |

**PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY**

Plaintiffs Spherature Investments LLC d/b/a/ WorldVentures Holdings, LLC (collectively, "**Plaintiffs**" or "**WorldVentures**") files this *Emergency Motion for Expedited Discovery* ("**Motion**") pursuant to Federal Rules of Civil Procedure 26, made applicable to this adversary proceeding under Federal Rules of Bankruptcy Procedure 7026. In support of the Motion, WorldVentures shows the Court as follows:

---

[1] The "**Plaintiffs**" and "**Debtors**" in the above-captioned jointly administered chapter 11 bankruptcy cases and adversary proceeding are: Spherature Investments LLC ("**Spherature**") EIN#5471; Rovia, LLC ("**Rovia**") EIN#7705; WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**") EIN#3846; WorldVentures Marketplace, LLC ("**WV Marketplace**") EIN#6264; WorldVentures Marketing, LLC ("**WV Marketing**") EIN#3255; WorldVentures Services, LLC ("**WV Services**") EIN#2220.

4818-9216-1755.3

## I.     BACKGROUND

1. WorldVentures has filed its *Original Complaint and Request for Preliminary Injunction* [*see* Docket No. 1] (the "**Complaint**") and its *Emergency Application for a Temporary Restraining Order and Preliminary Injunction and Supporting Memorandum* [*see* Docket No. 2] (the "**Application**"), whereby WorldVentures seeks injunctive relief and damages against Defendant Kenneth E. Head ("**Head**") due to Head's violations of his contractual non-compete and common law fiduciary duties.

2. Head is the former President and Chief Strategy Officer for WorldVentures, which is a multilevel marketing company that sells lifestyle-membership travel products and services. Its core business is to provide exclusive membership-based travel services to its members.

3. After executing a series of agreements enabling Seacret Direct, LLC ("**Seacret**") to solicit WorldVentures' downline and customers, which were procured in part through his subterfuge, Head resigned from WorldVentures to become the new President and Chief Development Officer of Seacret. Although Seacret had no historical presence in the travel industry, Head's recent arrival at Seacret came with a public announcement of Seacret's launch of its new "lifestyle" membership travel program—touted as almost identical to WorldVentures' business— aimed at selling travel related products and services through multilevel marketing (e.g. a "Competitive Business", as defined in Heads employment agreement). Recent online promotional videos confirm that Head is at the forefront of Seacret's new foray into the multilevel marketing travel industry and other evidence suggests that he was participating in the establishment of this business and the recruitment of WorldVentures' downline and customers while still employed by WorldVentures. Still other circumstantial evidence suggests that Head (and most assuredly Seacret) may be using WorldVentures confidential and proprietary information to do so.

4.      As explained in more detail in the Plaintiffs' Complaint and Application filed contemporaneously herewith at Docket Nos. 1 and 2, respectively, by leading the effort to implement WorldVentures' membership-based travel program at Seacret, Head has breached his non-compete and fiduciary obligations to WorldVentures. Upon information and belief, Head also breached those covenants and obligations by leading Seacret's efforts to solicit WorldVentures' sales representatives, customers, members, vendors, and suppliers in a competing business and/or to use or disclose WorldVentures' confidential and proprietary information.

5.      Head's campaign with Seacret to launch a copy-and-paste version of WorldVentures' own product after Head caused WorldVentures to disclose its most sensitive business information to Seacret under false pretenses to purportedly improve the precarious financial condition precipitated by Head's wanton mismanagement supports formal, expedited discovery. Expedited discovery is necessary to more fully understand the extent to which Head has been involved with Seacret's scheme to gain access WorldVentures' most valuable assets in order to unfairly compete. Such discovery would include information and testimony concerning: (a) the circumstances and terms surrounding Head's employment with Seacret and Seacret's launch of a competing business; (b) Head and/or Secret's access to and use of WorldVentures' confidential information; (c) Head's and/or Seacret's recruitment and solicitation of WorldVentures' sales agents, customer, employees and/or vendors; (d) Head's and/or Seacret's interference with WorldVentures' relationships and/or contracts with its sales agents, customers, employees and/or vendors; and (e) Seacret's proposed purchase of WorldVentures' assets. Such discovery is also necessary to prevent any further damage to WorldVentures' business as a "going concern." The need for expedited discovery in this matter is particularly vital in order to prepare for an anticipated evidentiary hearing on WorldVentures' Application for a temporary injunction

and Head's actions', which may have a direct effect on WorldVentures' proposed sale of substantially all of its assets in a stalking-horse bid under section 363 of the Bankruptcy Code (the "**Sale Motion**"). *See* Case No. 20-42492, at Docket No. 92.

6. The hearing on the temporary injunction will take place in an expedited fashion, and the Sale Motion will take place on March 2, 2021. Therefore, time is of the essence, and WorldVentures hereby requests that the Court grant leave to conduct formal discovery on an expedited basis.

## II.
## JURISDICTION

7. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(2)(A), and (O).

9. This Motion relates to the Spherature Investments LLC, et al. bankruptcy cases, jointly administered under case number 20-42492, filed under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Eastern District of Texas (Sherman Division). Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1409(a).

## III.
## ARGUMENT AND AUTHORITIES

**A.    This case merits expedited discovery.**

10. The Fifth Circuit has adopted a "good cause" test to determine whether expedited discovery is appropriate. *See U.S. Commodity Futures Trading Comm'n v. M25 Investments, Inc.*, No. 3-09-CV-1831-M, 2009 WL 3740627, at *1 (N.D. Tex. Sept. 29, 2009), *St. Louis Grp., Inc.*

*v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011). Courts consider the following factors in determining whether "good cause" exists to order expedited discovery:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

*St. Louis Grp., Inc.*, 275 F.R.D. at 241, n. 4 (quoting *In re Fannie Mae Derivative Litigation*, 227 F.R.D. 142, 143 (D.D.C. 2005)). In determining "good cause," the court "must examine the discovery request 'on the entirely of the record to date and the reasonableness of the request in light of all surrounding circumstance." *See, e,g., Huawei Techs. Co., Ltd. v. Yiren Huang*, 4:17-CV-893, 2018 WL 10127426 (E.D. Tex. Apr. 4, 2018) (citation omitted).

11. Here a preliminary injunction hearing to enjoin Head's actions and those in concert with him is pending before the Court. The breadth of the discovery requests to the relevant parties are sufficiently narrow to ascertain and understand the scope of the issues relating to Head's conduct in concert with Seacret and the effect of such conduct on the bankruptcy estate. The burden on the relevant parties to comply with the discovery requests is outweighed by the risk of harm of failing to timely discover the full extent of the issues incident to Head's actions and the harm they have and will cause. *See St. Louis Group, Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (explaining that "good cause" may be found when the need for expedited discovery outweighs the prejudice to the responding party in consideration of the administration of justice).

12. In light of WorldVentures' pending preliminary injunction, along with Head's ongoing conduct at issue in the case, the ongoing harm suffered by WorldVentures, and the effect of such conduct and harm on WorldVentures' assets that are subject to the Sale Motion, time is of the essence. Under the totality of the circumstances, because the assets subject to the Sale Motion

are the same assets that Seacret (with Head's assistance) has likely implemented into their own business, it is imperative to protect such assets from any further harm and misappropriation by Head and Seacret; therefore, discovery related to Head and Seacret's use of such assets is probative and relevant. *See id.* at 240 (the "good cause" standard for expedited discovery takes into consideration the totality of the circumstances in the need for expedited discovery). In other words, Expedited discovery is necessary to understand the extent to Head's actions and their effect on WorldVentures' business and their ability to effectuate an orderly reorganization. *See id.*

13. As shown above, there is good cause to modify the normal discovery procedures in this matter. The discovery requests herein are reasonable and narrowly tailored to the circumstances in which WorldVentures faces in protecting its business.

## IV.
## REQUEST FOR RELIEF

Based on the foregoing, WorldVentures respectfully requests that the Court grant this Motion and enter an order for limited discovery on an expedited basis as follows:[2]

  a) WorldVentures may take up to four (4) depositions that shall last no longer than three (3) hours each to include: (i) Kenneth E Head; (ii) a corporate representative of Seacret Direct, LLC on the topics identified in the attached **Exhibit B**; and (iii) two other relevant fact witnesses to be selected by WorldVentures. WorldVentures respectfully requests that the foregoing witnesses be required to appear to provide oral deposition testimony on no more than three (3) days business notice, by video or in person, at a time, location and method agreed upon by the parties; but, if no

---

[2] **Exhibit A**, attached hereto, contains the instructions and definitions for the deposition topics and each set of discovery requests, attached hereto in Exhibits B and C, respectively.

such agreement is reached, at a location in Plano, Texas selected by WorldVentures;[3] and

b) WorldVentures may serve up to fifteen (15) requests for production each on Defendant Kenneth Head and to Seacret Direct, LLC in the attached **Exhibit C**, to which written responses/objections shall be served and responsive documents contemporaneously produced not later and seven (7) days of service; and

WorldVentures further requests that the Court grant such other legal and equitable relief as the Court may deem just and proper.

DATED: February 22, 2021              Respectfully submitted by:

*/s/ Steven C. Lockhart*
Marcus A. Helt (TX 24052187)
Robert Slovak (TX 24013523)
Steven C. Lockhart (TX 24036981)
Aaron E. Chibli (TX 24091222)
Emily F. Shanks (TX 24110350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
rslovak@foley.com
slockhart@foley.com
achibli@foley.com
eshanks@foley.com

**COUNSEL FOR THE PLAINTIFFS
SPHERATURE INVESTMENTS LLC,** *et al*
**d/b/a WORLDVENTURES HOLDINGS, LLC**

---

[3] Such depositions shall last no longer than three (3) hours each, and whatever time used shall count against the seven (7) hour time limitation per deponent or as allowed under the Federal Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I hereby certify that, on February 22, 2021, a true and correct copy of the foregoing document was served electronically on all parties in interest by the Court's ECF system.

*/s/ Steven C. Lockhart*
Steven C. Lockhart

## CERTIFICATE OF CONFERENCE

I hereby certify that, on February 22, 2021, I communicated with counsel for Mr. Head via email regarding the relief sought herein, and we have scheduled a conferral for February 22, 2021 at 12:00 p.m. (CT) regarding the relief sought herein.

*/s/ Steven C. Lockhart*
Steven C. Lockhart

## CERTIFICATE OF CONFERENCE

I hereby certify that, on February 22, 2021, I conferred with counsel for Seacret Direct, LLC regarding the relief sought herein and counsel did not take a position as to the relief sought herein.

*/s/ Marcus H. Helt*
Marcus A. Helt

# EXHIBIT A

## Instructions and Definitions

These Instructions and Definitions shall apply to the deposition topics in Exhibit B, and the requests for production in Exhibit C to Kenneth E. Head ("**Head**") and to Seacret Direct, LLC ("**Seacret**"). For purposes of interpreting or construing the scope of the following topics for examination and requests for production, all terms are given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual topic or request. Moreover, for the purposes of these topics and requests, the following terms are given the following meanings:

1. The relevant "**Time Period**" for such requests will be March 2017 through February 10, 2021.

2. The connectives "**and**" and "**or**" should be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3. "**Including**" means "including, without limitation.

4. "**Communication**" or "**communications**" means any contact or act by which information, of any form or nature, is transmitted or conveyed from one Person to another Person or between or among two or more Persons, regardless of whether conveyed through verbal, oral, visual, written, electronic, and/or through any other mode or medium or expression.

5. "**Concern**" or "**concerning**" means supporting, negating, refuting, memorializing, analyzing, constituting, describing, referencing, discussing, connected with, or otherwise pertaining in any way, in whole or in part, to the subject matter referred to in each request.

6. "**Confidential Information**", as defined by the Employment Agreement, means all information of a confidential or proprietary nature, including, but not limited to, rate and price information on products and services provided or offered by; records and data relating to past or current customers; records and data relating to employees and independent contractors; records and data relating to vendors, suppliers, representatives, and agents; financial information including, but not limited to, revenues, expenses, capital expenditures, profits and losses, sources of financing, tax reporting, investments, and acquisitions; records and data relating to investors, creditors, partners; business know-how and trade secrets; sales and marketing programs and techniques; business, computer, employee, and other programs and systems; compensation and benefits paid or offered to any officer, manager, employee, independent contractor, agent, or representative; and any other information designated as confidential, whether prior or subsequent to its disclosure to the Executive, provided, however, that the term shall not include any information concerning that is or shall become generally known to the industry or to the public.

7. "**Document**" or "**documents**" is synonymous and equal in scope to the use of this term in Federal Rule of Civil Procedure 34(a). Specifically, "Document" has the broadest meaning

cognizable under the Federal Rules of Civil Procedure and includes any: (a) handwritten, typed, and printed matter of any kind, including, without limitation, agreements, contracts, Correspondence, forecasts, memoranda, notes, jottings, speeches, press releases, diaries, examinations, statistics, letters, facsimiles, telegrams, minutes, time records, payroll records, expense records, reports, studies, training manuals, canceled checks, statements, receipts, delivery tickets, returns, summaries, work orders, purchase orders, pamphlets, books, prospectuses, statements of operation, offers, notations or written memorializations of any conversations, telephone calls, meetings, or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, and worksheets, and all drafts, alterations, modifications, changes, and amendments of any of the foregoing, and shall include the originals and all nonidentical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise; (b) graphic or aural records or representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures; and (c) electronic, mechanical or electric records or representations of any kind, including, without limitation, e-mails, tapes, cassettes, disks, recordings, and transcriptions of the foregoing. A draft of a non-identical copy is a separate document within the meaning of this term.

8. "**Employment Agreement**" refers to the Executive Employment Agreement by and between WorldVentures Holdings, LLC and Kenneth E. Head, dated July 12, 2018.

9. "**Co-Marketing Agreement**" means the agreement dated July 22, 2020 by and between WorldVentures Marketing, LLC and Seacret Direct, LLC.

10. "**Letter of Intent**" or "**LOI**" means the letter dated November 10, 2020 by and between Spherature Investments LLC (d/b/a WorldVentures Holdings, LLC) and Seacret Direct, LLC.

11. "**Limited Solicitation Agreement**" or "**LSA**" means the agreement dated November 11, 2020 by and between WorldVentures Marking, LLC and Seacret Direct, LLC.

12. "**WorldVentures**" means, either collectively or individually, Spherature Investments LLC ("**Spherature**"); Rovia, LLC ("**Rovia**"); WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**"); WorldVentures Marketplace, LLC ("**WV Marketplace**"); WorldVentures Marketing, LLC ("**WV Marketing**"); and WorldVentures Services, LLC ("**WV Services**") and each of their agents, officers, directors, lawyers, professionals, employees, and representatives, and any other parent companies, subsidiary companies or affiliates.

13. "**WorldVentures' Agents**" any and all of its current or former executives, officers, sales representatives, employees, independent contractors, or agents, including its current and former vendors, suppliers, and/or customers.

14. "**Seacret**," refer to Seacret Direct, LLC and its agents, officers, directors, lawyers, professionals, employees, and representatives, and any other parent companies, subsidiary companies or affiliates.

15. "**Seacret's Legacy Business**" shall mean membership-based, direct sales, and marketing of dietary, nutritional and skin care products business.

16. "**Seacret's Travel Business**" refers to Seacret's travel platform, "lifestyle" company, as referenced in the following January 2021 videos:

    a.  https://vacationleader.wistia.com/medias/ztuypgg23g?wtime=0

    b.  https://www.youtube.com/watch?app=desktop&v=HLcXFdFkEjc

    c.  https://vimeo.com/506374313

    d.  https://grouply.com/trips/

17. "**Head**" refers to Kenneth E. Head and each of his, agents, representatives, and affiliates.

18. "**Top Tier Agreement**" refers to the Master Agreement of Terms and Conditions of Service by and between Top Tier Travel and Rovia, LLC, dated January 4, 3018.

19. "**DreamTrips**" shall mean the WorldVentures' brand and website through which WorldVentures' Agents and its customers manages and offers its travel-based products and services.

# EXHIBIT B

## Deposition Topics for Examination

1. The circumstances and terms surrounding Head's employment relationship with Seacret, including but not limited to Head's communications with and documents exchanged between Head and any of Seacret's representatives, officers, and agents during and after his employment with WorldVentures.

2. The circumstances giving rise to, and the negotiation, execution and performance of the Co-Marketing Agreement, as well as Head's involvement with the same.

3. The circumstances giving rise to, and the negotiation, and intended performance of the LOI executed between Seacret and WorldVentures, as well as Head's involvement with the same.

4. The circumstances giving rise to, and the negotiation, execution and performance of the LSA executed between Seacret and WorldVentures, as well as Head's involvement with the same.

5. All aspects of Seacret's access to the WorldVentures' Confidential Information, as well as Head's involvement with the same.

6. All aspects of Seacret's creation, formation, and launch of Seacret's Travel Business as well as Head's involvement with the same.

7. All aspects of Seacret's marketing of Seacret's Travel Business, as well as Head's involvement with the same.

8. Seacret's communications with, and documents exchanged with, WorldVentures' Agents, as well as Head's involvement with the same.

9. All aspects of Seacret's relationship ,communications and/or documents exchanged with any persons presently and/or formerly affiliated with WorldVentures, including WorldVentures' agents, as well as Head's involvement with soliciting and/or facilitating Seacret's communications with WorldVentures' Agents.

10. All aspects regarding Seacret's relationship with WorldVentures, Virginia (Gini) Trask, Top Tier Travel, Inc., and/or Grouply Ventures, LLC, and their respective agents, officers, directors, lawyers, professionals, employees, and representatives and any other parent companies, subsidiary companies, or affiliates.

# EXHIBIT C

## Requests for Production to Kenneth E. Head

1. Communications and Documents exchanged by and between Head, on the one hand, and Seacret, on the other hand, concerning WorldVentures', and/or WorldVentures' business.

2. Communications and Documents exchanged by and between Head, on the one hand, and Seacret, on the other hand, concerning Seacret, including concerning Seacret's Legacy Business, the Co-Marketing Agreement, LOI, LSA and/or Seacrets' Travel Business.

3. Communications and Documents exchanged by and between Head, on the one hand, and Seacret, on the other hand, concerning the circumstances and terms surrounding Head's employment relationship with Seacret, including but not limited to Head's Communications with and Documents exchanged by and between Head and any of Seacret's representatives, officers, and agents during and after his employment with WorldVentures.

4. Communications and Documents exchanged by and between Head, on the one hand, and WorldVentures' Agents, on the other hand, concerning Seacret, Seacret's Legacy Business, and/or Seacret's Travel Business.

5. All Confidential Information currently in Head's possession and Communications concerning the same.

6. Communications and Documents related to Seacret's Travel Business.

7. Communications and Documents exchanged by and between Head, on the one hand, and Seacret, on the other hand, concerning DreamTrips.

8. Communications and Documents exchanged by and between Head, on the one hand and Seacret, on the other hand, concerning Virginia (Gini) Trask, Top Tier Travel, Inc., Grouply Ventures, LLC, and/or the Top Tier Agreement.

9. Communications and Documents exchanged by and between Head, on the one hand, and Virginia (Gini) Trask, on the other hand, concerning Seacret's Travel Business, Top Tier Travel, Inc., Grouply Ventures, LLC, and/or the Top Tier Agreement.

10. Documents and Communications concerning the circumstances giving rise to, and the negotiation, execution and performance of the LOI, LSA, and the Co-Marketing Agreement, as well as concerning Seacret's Legacy Business and Seacret's Travel Business.

**Requests for Production to Seacret Direct, LLC**

1. Communications and Documents exchanged by and between Seacret, on the one hand, and Head, on the other hand, concerning WorldVentures', and/or WorldVentures' business.

2. Communications and Documents exchanged by and between Seacret, on the one hand, and Head, on the other hand, concerning Seacret, including concerning Seacret's Legacy Business, the Co-Marketing Agreement, LOI, LSA and/or Seacrets' Travel Business.

3. Communications and Documents exchanged by and between Seacret, on the one hand, and Head, on the other hand, concerning the circumstances and terms surrounding Head's employment relationship with Seacret, including but not limited to Head's Communications with and Documents exchanged by and between Head and any of Seacret's representatives, officers, and agents during and after his employment with WorldVentures.

4. Communications and Documents exchanged by and between Seacret, on the one hand, and WorldVentures' Agents, on the other hand, concerning Seacret, Seacret's Legacy Business, and Seacret's Travel Business.

5. All Confidential Information currently in Seacret's possession and Communications concerning the same.

6. Any Confidential Information provided to you by Head or a WorldVentures' Agent during the Time Period.

7. Communications and Documents related to Seacret's Travel Business.

8. Communications and Documents exchanged by and between Seacret, on the one hand, and Head, on the other hand, concerning DreamTrips.

9. Communications and Documents exchanged by and between Seacret, on the one hand and Head, on the other hand, concerning Virginia (Gini) Trask, Top Tier Travel, Inc., Grouply Ventures, LLC, and/or the Top Tier Agreement.

10. Communications and Documents exchanged by and between Seacret, on the one hand, and Virginia (Gini) Trask, on the other hand, concerning Seacret's Travel Business, Top Tier Travel, Inc., Grouply Ventures, LLC, and/or the Top Tier Agreement.

11. Documents and Communications concerning the circumstances giving rise to, and the negotiation, execution and performance of the LOI, LSA, and the Co-Marketing Agreement, as well as concerning Seacret's Legacy Business and Seacret's Travel Business.

12. Seacret's internal Documents and Communications concerning the circumstances giving rise to, and the negotiation, execution and performance of the LOI, LSA, and the Co-Marketing Agreement during the Time Period.

13. Seacret's internal Documents and Communications concerning the creation, launch, and implementation of a Seacret's Travel Business.

14. Internal Documents and Communications concerning the circumstances and terms of Head's employment with Seacret, including Documents and Communications concerning WorldVentures' Agents moving from WorldVentures to work for and/or with Seacret, including Head, Justin Call, Jay Payso, Marc Accetta, Matt Morris, and Jefferson Santos during the Time Period.

15. Internal Documents and Communications concerning DreamTrips, Virginia (Gini) Trask, Top Tier Travel, Inc., Grouply Ventures, LLC, and/or the Top Tier Agreement during the Time Period.