IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SPHERATURE INVESTMENTS LLC, | § | Case No.:20-42492 |
| *et al*. | § | |
| | § | Jointly Administered |
| Debtors. | | |

| | | |
|---|---|---|
| | § | |
| SPHERATURE INVESTMENTS LLC, | § | |
| *et al*. d/b/a WORLDVENTURES | § | |
| HOLDINGS, LLC[1] | § | |
| Plaintiffs, | § | |
| | § | Adversary No. 21-04058 |
| vs. | § | |
| | § | |
| KENNETH E. HEAD, | § | |
| | § | |
| Defendant. | | |

### DECLARATION OF ERIC HAYNES

1. I, Eric Haynes, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the following statements are true and correct and within in my personal knowledge. If called as a witness, I could competently testify to the facts set forth below.

2. I am the Chief Legal Officer ("**CLO**") at Spherature Investments, LLC d/b/a WorldVentures Holdings, LLC ("**WorldVentures Holdings**"), at 5360 Legacy Dr. Plano, TX 75024. I have been with WorldVentures Holdings for two (2) years. As CLO, I oversee the WorldVentures Holdings' legal department, and I am responsible for the legal affairs of

---

[1] The "**Plaintiffs**" in the above-captioned jointly administered chapter 11 bankruptcy cases ("**Cases**") are: Spherature Investments LLC   EIN#5471; Rovia, LLC EIN#7705; WorldVentures Marketing Holdings, LLC EIN#3846; WorldVentures Marketplace, LLC EIN#6264; WorldVentures Marketing, LLC EIN#3255; WorldVentures Services, LLC EIN#2220.

WorldVentures Holdings and its subsidiaries (collectively, "**WorldVentures**") generally. My job includes working closely with senior management in providing legal advice regarding the affairs of WorldVentures.

3. This Declaration is based on my personal knowledge and upon my review of documents prepared in the ordinary course of business by WorldVentures, including Kenneth (Eddie) Head ("**Head**")'s Executive Employment Agreement, a true and correct copy is stipulated between the parties as Plaintiffs' Exhibit 1 (the "**Employment Agreement**").

4. In my capacity as CLO, I am familiar with various agreements between and among WorldVentures Holdings and/or any of its subsidiaries, on the one hand, and Seacret Direct, LLC ("**Seacret**"), on the other hand, including the Co-Marketing Agreement and the Limited Solicitation Agreement ("**LSA**"), true and correct copies of which the parties have stipulated as Plaintiffs' Exhibits 22 and 8, respectively. I am also familiar with the unexecuted Asset Purchase Agreement ("**APA**") and the negotiations for the same between WorldVentures Holdings and Seacret.

5. I was provided a draft of the LSA only a short time before it was executed. I opposed the LSA for legal reasons, and because I thought it was a bad idea to allow Seacret access to WorldVentures' Exigo database under the circumstances. Wayne Nugent executed the LSA as Chief Executive Officer of WorldVentures Marketing, LLC ("**WorldVentures Marketing**") on November 11, 2020.

6. On or about November 18, 2020, I was asked to prepare an email to provide a limited waiver of section 1.5 of the LSA. The parties have stipulated to a true and correct copy of that email as Exhibit 31 (the "**LSA Section 1.5 Email**").

7. Section 1.5 of the LSA is silent about individual employees' employment agreements or other individual agreements with any WorldVentures entity.

8. As the drafter of the LSA Section 1.5 Email, I intended to allow Seacret to solicit WorldVentures Marketing's employees in anticipation of a final APA. WorldVentures did not intend for the LSA Section 1.5 Email to waive any independent obligations the employees' owed to any WorldVentures entity, including individual employees' employment agreements and their non-competition agreements with any WorldVentures entity.

9. I was comfortable with the LSA Section 1.5 Email for three reasons: (1) the LSA is by and between separate entities than those with whom WorldVentures Holdings may have employment agreements; (2) the LSA, as well as the LSA Section 1.5 Email, are silent with regard to any non-compete agreements with any employee; and (3), Seacret was not known or believed to be in the travel business at the time of the LSA Section 1.5 Email.

10. As to the first reason, the LSA is between and among WorldVentures Marketing, on the one hand, and Seacret, on the other hand. WorldVentures Marketing is a subsidiary of WorldVentures Holdings.

11. This is important because, the LSA Section 1.5 Email is intended to address the agreements, rights, or obligations of WorldVentures Marketing, and does not relate to its parent company, WorldVentures Holdings.

12. As it relates to Head, the LSA Section 1.5 Email does not address Head's Employment Agreement and the non-compete provisions ancillary thereto, which are between and among Head, on the one hand, and WorldVentures Holdings, on the other hand.

13. As to the second reason, the LSA does not mention *employees'* employment agreements or non-competition agreements.

14. While Section 1.1 of the LSA references "WVM Sales Representatives'" non-compete obligations, those are between and among WVM Sales Representatives and WorldVentures Marketing. By contrast, Section 1.5 does not address employees' employment agreements or non-compete restrictions at all, and certainly does not address agreements between and among *WorldVentures Holdings* and any employees.

15. The LSA Section 1.5 Email was not intended to waive Head's Employment Agreement with WorldVentures Holdings, nor the non-compete provisions ancillary thereto.

16. Additionally, Head's Employment Agreement contains a waiver provision providing that a waiver of any provision or condition of the Employment Agreement is not valid unless executed in writing and signed by the party to be bound, and then only to the extent specified in such waiver. *See* Ex. 1, Art. IV, ¶ 4.10. No such document exists.

17. As to the final reason, Seacret was not known or believed to have any presence in the membership-based, direct sales travel industry when the LSA Section 1.5 Email was sent. Rather, it is my understanding that Seacret's sales network primarily sold nutritional and skincare products. Thus, Seacret did not directly compete with WorldVentures' membership-based travel products marketed through direct sales.

18. At the time of LSA Section 1.5 Email, I understood that Seacret only intended to enter into the membership-based, direct sales travel industry upon the final execution and consummation of the APA. The LSA Section 1.5 Email was not intended to allow Seacret to a launch a membership-based, direct sales travel program without an APA in place.

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**DECLARATION OF ERIC HAYNES** PAGE 4
4832-5973-8849.5

Executed in Plano, Texas on March 24, 2021.

*Eric Haynes*
5D04899A68454FC...

Eric Haynes
Chief Legal Officer
WorldVentures Holdings, LLC