# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SPHERATURE INVESTMENTS LLC, | § | Case No.: 20-42492 |
| *et al.* | § | |
| | § | Jointly Administered |
| Debtors. | § | |

| | | |
|---|---|---|
| SPHERATURE INVESTMENTS LLC, | § | |
| *et al.* d/b/a WorldVentures Holdings, | § | |
| LLC,[1] | § | |
| Plaintiffs, | § | |
| | § | Adversary No. 21-04058 |
| vs. | § | |
| | § | |
| KENNETH E. HEAD, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS

Spherature Investments LLC d/b/a WorldVentures, Holdings, LLC, together with the other Plaintiffs, ("**WordVentures**") object to and move to strike the declarations of Kenneth E. Head ("Head"), Byron Schrag ("Schrag"), Izhak Ben Shabat ("Ben Shabat"), Matt Morris ("Morris"), and Muzafer Najifi ("Najifi") (collectively, the "Declarations") because the Declarations contain testimony: (1) irrelevant to WorldVentures' request for a preliminary injunction; (2) comprising conclusory testimony on both fact and law and narrative testimony; (3) based on hearsay or hearsay within hearsay; and (4) violating the "Best Evidence Rule".

---

[1] The "**Plaintiffs**" and "**Debtors**" in the above-captioned cases are: Spherature Investments LLC ("**Spherature**") EIN#5471; Rovia, LLC ("**Rovia**") EIN#7705; WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**") EIN#3846; WorldVentures Marketplace, LLC ("**WV Marketplace**") EIN#6264; WorldVentures Marketing, LLC ("**WV Marketing**") EIN#3255; WorldVentures Services, LLC ("**WV Services**") EIN#2220.

## I. SUMMARY OF ARGUMENT

WorldVentures seeks to preliminarily enjoin Head from working at Seacret Direct, LLC ("Seacret") in violation of the non-compete and confidentiality provisions contained in his employment agreement ("Employment Agreement"). Appl. PI (Feb. 22, 2021) at 21; Supp. PI Br. (Mar. 25, 2021) at 16. In turn, Head offers three defenses: (i) Head did not receive adequate consideration for the non-compete in the Employment Agreement; (ii) WorldVentures waived the Non-Compete based on an email waiving rights in the separate agreement, between separate entities that does not concern non-competition restrictions at all, and (iii) a confidentiality and proprietary rights agreement somehow superseded Head's Employment Agreement non-compete restrictions.[2] Those are the sole issues in dispute.

Despite that, Head seeks to introduce inadmissible testimony through five separate Declarations totaling 46 pages and 114 paragraphs—which can be broken out into four different categories. A descriptive chart of declarants' various inadmissible testimony accompanied by WorldVentures' corresponding objections is attached as Exhibit 1.

The first category consists of testimony irrelevant to WorldVentures' application for preliminary injunction and Head's defenses. Specifically, the Declarations contain an array of subject matter including, but not limited to:

- the historical precarious financial situation faced by the bankruptcy Debtors;

---

[2] *E.g.*, Head Obj. TRO (Feb. 23, 2021) ¶¶ 3 (" . . .Debtors gave written permission for Seacret to hire Head."); 5 ("However, Head had received any confidential information from Debtors for more than a decade without a non-compete covenant"), 14 ("However, Debtors provided no consideration for the non-compete covenant."); Hr'g Tr. at 24:19-21 ("It was a full waiver of their rights to enforce any non-compete agreement against anyone, to the extent they had any valid agreement."), 27:21-22 ("And it's also Texas law that past consideration for non-compete agreement is insufficient.").

- a purported conspiracy by non-parties allegedly seeking to control WorldVentures; and

- failed negotiations for an asset purchase by Seacret.

(the "Irrelevant Testimony"). The Irrelevant Testimony is apparently not only intended to distract the Court from the real issues that remain, but to attempt to impugn the character of certain WorldVentures representatives and serve as a Seacret PR stunt, presumably to use to promote its new travel business. As the Court noted during the February 25, 2021 temporary restraining order hearing: "now is not anything and everything that is subject of the underlying dispute between the parties." Hr'g Tr. (Feb. 25, 2021) at 92:5-13. Testimony and evidence should thus be limited to the issues of for the Court to decide: (1) does Eddie Head have an enforceable non-compete, (2) is Eddie Head competing; and (3) the defenses thereto.

The second category of improper testimony consists of inadmissible conclusory testimony of fact and law (the "Conclusory & Narrative Testimony"). Declarants may not make determinations of law (which is the province for the Court), make factual findings without a basis and personal knowledge, and narrate without factual predicate.

The third category of inadmissible testimony is comprised of hearsay and hearsay within hearsay (collectively, the "Hearsay Testimony"). In particular, the Declarations attempt to offer hearsay testimony from Bo Short—a third party who will not testify at the hearing—along with all manner of statements allegedly attributable to Wayne Nugent, Michael Poates and Eric Haynes—all of whom Head has placed on his "will call" list. Elsewhere, declarants seek to testify to documents that are neither identified nor admitted into evidence.

The final category of inadmissible testimony violates the "Best Evidence Rule" (the "Descriptive Testimony"). Declarants fail to identify and improperly try to testify as to the meaning and what is contained in various documents, videos, recordings, agreements, etc.

For these reasons and those below, WorldVentures objects to the Declarations' inadmissible and irrelevant testimony, and requests the Court to strike the same.

## II. LEGAL GROUNDS FOR OBJECTIONS

A motion to strike is appropriate to strike inadmissible testimony contained in a declaration offered during a preliminary injunction hearing. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2015 WL 1981563, at *4 (W.D. Tex. May 1, 2015). While it is acknowledged that evidentiary standards are "less formal" at the preliminary injunction stage, the reason for being so is to: (1) relieve a party from "prov[ing] his case in full at a preliminary injunction hearing;" and (2) allow for "quick action [when] necessary to prevent irreparable harm." *See Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987). Neither standard is applicable here.

### A. Irrelevant testimony is not admissible and violates the Order.

"Irrelevant evidence is inadmissible." Fed. R. Evid. 402. Evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. As already detailed above, the Court held that the hearing would be limited to the issues serving as the basis of WorldVentures' preliminary injunction.

### B. Testimony may not be conclusory and must be supported by personal knowledge.

A declarant may only "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. As a consequence, a declarant may not unilaterally state a factual conclusion and must lay a factual predicate based on personal knowledge to support that conclusion. *Id*. In that same vein, declarants may not give legal conclusions. *See, e.g., United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999) (examining Federal Rule of Evidence 704).

**C. The declarant's testimony may not be based in hearsay.**

"Hearsay is inadmissible" unless otherwise allowed by federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 802. "Hearsay" is a statement that: (1) "the declarant does not make while testifying at the current trial or hearing;" and (2) "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801.

**D. The declarant's testimony cannot describe the document under the "Best Evidence Rule."**

The "best evidence" rule requires the original or duplicate of a document to prove the contents of that document. Fed. R. Evid. 1002-03. "The elementary wisdom of the best evidence rule rests on the fact that the document [itself] is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description [of it]. . ." *Gordon v. United States*, 344 U.S. 414, 421, 73 S.Ct. 369, 374, 97 L.Ed. 447 (1953). "[T]he rule is a mechanism to prevent fraud or mistransmission of information, *i.e.*, to ensure accuracy." *United States v. Holton*, 116 F.3d 1536, 1545 (D.C. Cir. 1997).

### III.  OBJECTIONS AND MOTION TO STRIKE

WorldVentures objects to and moves to strike the Declarations as follows:

**A. Objection No. 1:**

The Irrelevant Testimony is contained in every paragraph of Morris and Schrag's declarations, paragraphs 4-31 of Najifi's declaration, paragraphs 3-17, 19-21, and 25-26 of Ben Shabat's declaration, and paragraphs 5-22, 24-26, 28-31, 35, and 37-38 of Head's declaration. The following are just a few examples of this testimony offered by declarants:

- "In 2020, after COVID-19, WorldVentures was having financial issues. Representatives were beginning to leave WorldVentures and the leaders were becoming concerned. By the fall of 2020, many of the sale representatives were not being paid. I was receiving a daily barrage of calls from representatives with

financial issues asking about payment of commissions. Sales representatives were leaving and most of the team leaders were ready to leave. Things continued to get worse and worse. As agents were not being paid, representatives stopped working which made the financial situation even worse. WorldVentures was unraveling. I thought that WorldVentures was going to die a slow death." M. Morris Dec. (Mar. 24, 2021) ¶ 3;

- "Throughout the summer and fall of 2020, the team leaders were watching an erosion of the field as representatives left for other jobs such as other network marketing companies and selling real estate. This erosion of the data base and the continuing worsening of the finances of WorldVentures caused me and the other team leaders to have great concern about the future of WorldVentures." B. Schrag Decl. (Mar. 24, 2021) ¶ 4;

- "We asked how Nugent feel [sic] about this plan. Poates said that they had Montgomery, the senior debt holder, on board, and that Nugent has no way of paying the senior debt. Poates said Nugent had personally guaranteed the loan to the senior debt holder. Poates said that Nugent would have no choice but to agree to this plan because WV had information that could put Nugent in 'jail.'" M. Najifi Decl. (Mar. 24, 2021) ¶ 18;

- "As an odd—but unsurprising—coda, on or about February 26, 2021, Dan Stammen, a former president of WV, hosted a Zoom call with various Seacret and WV sales representatives. On this call, a recording of which I have viewed, Stammen made numerous disparaging comments about Seacret and presaged the exact litigation that WV filed against Seacret a week later. Stammen also told the attendees that he was coming back to WV as CEO and that he had a deal to take the company out of bankruptcy. When asked who would be staying at WV in connection with this deal, Stammen replied that Michael Poates, Eric Haynes and Paul Jenkins would run the business." I. Ben Shabat Decl. (Mar. 24, 2021) ¶ 26; and

- "For 14 years I have been in love with WorldVentures, its community, its leaders, its culture. I have dedicated my efforts for WorldVentures to support the growth or preservation of its business and to the people that it served. The ability to help people find supplemental sources of income with high quality/high value products and services is unique to the industry and empowering thousands to help themselves over the last 15 years has been personally fulfilling. It has been a personal mission to help as many as I could and change perception of the industry. Over the past few years, I have loaned hundreds of thousands of dollars out of my own pocket to the company to pay commissions, contractors and to keep the lights on. I have paid light bills, rent and mortgages for representatives who couldn't because of our delays, and foregone repayment of my own expenses for more than a year and a half to save the company cashflow when it was most needed. Ultimately, I was not repaid all of my expenses and simply trusted my contributions and intentions would be reciprocated. Hundreds of thousands of representatives and customers have trusted me and I have served

>them and the business loyally, always assuming good intent and never with my hand out personally but rather trusting that what was good for the people was good for the business. In this industry, the people are your distribution channel and if you do not have their trust, you do not have a business. I operated for 12 years without even a contract for my salary, let alone the equity promised me for years nor bonus a program." E. Head Decl. (Mar. 24, 2021) ¶ 5.

All of this testimony and the testimony in Morris and Schrag's declarations, Najifi's declaration at paragraphs 4-31, Ben Shabat's declaration at paragraphs 3-17, 19-21, and 25-26, and Head's declaration at paragraphs 5-22, 24-26, 28-31, 35, and 37-38 are irrelevant to any claim or defense to be presented at the preliminary injunction hearing and in violation of the Court's prior admonishment that the evidence "now is not anything and everything that is subject of the underlying dispute between the parties." Hr'g Tr. (Feb. 25, 2021) at 92:5-13. Nothing in the above-reference testimony is offered regarding the negotiation, execution, and performance of the Employment Agreement nor is any offered concerning the facts related to Head's affirmative defenses (*e.g.*, lack of consideration, receipt and access to confidential information, waiver). WorldVentures objects and moves to strike these paragraphs.

B. **Objection No. 2:**

The Conclusory & Narrative Testimony in paragraphs 4, 6-9, 17, 19-20, 26, 28-31, 34-35, and 37-38 of Head's declaration and paragraphs 3, 8, 12-16, 22, and 24-25 of Ben Shabat's declaration are inadmissible conclusory testimony. The following are examples of such testimony offered by declarants:

- After catastrophic impact from COVID-19 following a declining business due to delay and nonpayment of commissions to the field of sales representatives, multiple failed attempts to raise capital or negotiate a successful acquisition of the Debtors' assets, the Parties entered into a series of agreements designed to initially support the business of each and ultimately to combine the companies businesses with open and mutually inclusive participation by the executives and attorneys of the parties. These discussions were handled openly, reciprocally and inclusively of the executives of both companies, the Parties' respective attorneys and stakeholders from inside the company directly and those with an

- I have not seen any evidence from the Debtors showing I have violated either the language or intent of my agreement with WorldVentures. I have not seen any evidence from WorldVentures that I have shared confidential information outside of the requirements of the negotiations under mutual confidentiality and by agreement or direction by the Nugent. I have not solicited a single employee or vendor or contractor on behalf of Seacret. E. Head Decl. (Mar. 24, 2021) ¶ 37.

- " . . . Head has never disclosed to me (or anyone else at Seacret) any of the confidential or proprietary information now claimed by WV. To the extent Seacret is in possession of any of the confidential or proprietary information now claimed by WV, Seacret obtained that information directly from WV as a result of the performance of the CMA and LSA." I. Ben Shabat Decl. (Mar. 24, 2021) ¶ 24.

Declarants' unilateral declarations as to what constitutes "evidence," whether a "violation" of the Employment Agreement occurred, what "confidential information" has been shared outside of any agreement with WorldVentures, and whether Head has "solicited" anyone are legal determinations for this Court—not for declarants to make. Moreover, declarants' narrative testimony and testimony unsupported by factual predicate or personal knowledge is wholly improper. *See* Fed. R. Evid. 602. WorldVentures objects and moves to strike the Conclusory & Narrative Testimony paragraphs.

C. **Objection No. 3:**

The Hearsay Testimony (*i.e.*, out-of-court hearsay statements offered to prove the truth of the matter) contained in paragraphs 7, 9-11, 13-22, 27-29, and 31-35 of Head's declaration and paragraphs 3-18, 20, 22, and 24-26 of Ben Shabat's declaration. As already detailed above, the Declarations attempt to offer hearsay testimony from Bo Short, a third party who will not testify at trial, along with all manner of hearsay testimony about statements allegedly made by Wayne Nugent, Michael Poates and Eric Haynes—all of whom Head has placed on his "will call" list. For example:

- "Following that initial call set up by Menge, I was involved in several other calls with Nugent and Ben Shabat. On these calls, Nugent discussed his idea of WorldVentures and Seacret joining forces to collaborate on a structure of selling the products of each company. Nugent and Ben Shabat discussed starting with Seacret's products and eventually including WorldVentures' travel membership . . ." E. Head Decl. (Mar. 24, 2021) ¶ 11;

- "In early October 2020, Short told me that Ben Shabat thought the Co-Marketing Agreement was performing poorly and that he did not want the product expense exposure and therefore had decided to terminate the Co-Marketing Agreement." *Id.* ¶ 13;

- "Shortly thereafter, I received a call from Ben Shabat who told me that Seacret wanted to terminate the Co-Marketing Agreement. Ben Shabat said he had information that WorldVentures was on the verge of bankruptcy. This was not as Bo Short had described their conversation and I asked Ben Shabat to be patient and let me talk to Nugent. I told Ben Shabat I was not aware the bankruptcy claim and wanted to verify the claim. I asked Ben Shabat to give me 24 hours." *Id.* ¶ 14; and

- "As the two sides were going back and forth trying to finalize the APA, Poates called me and urged me to consider including Rovia in Seacret's offer. Poates also represented to me that if Seacret offered to give him and several other current WV executives an ownership stake in Rovia, he would make sure that a sale of Rovia would be consummated. He also reiterated his plan to push Nugent out of the company. Several days later on December 12, 2020, I called Poates and recorded the call. Poates repeated his proposal, including volunteering that he had "pre-borrowed" $1 million to invest in the transaction and that Rovia's "stock will sky rocket" after closing. . . ." I. Ben Shabat Decl. (Mar. 24, 2021) ¶ 20.

The declarants may not testify to what each other and third parties said, about what was contained in emails, press releases, or documents, and what was said by witnesses that Head is calling on direct examination. WorldVentures objects and moves to strike the Hearsay Testimony in the paragraphs identified above.

D. **Objection No. 4:**

The Descriptive Testimony violating the Best Evidence Rule is contained in paragraphs 3-4, 7-8, 15, 20, 23-24, and 26-30 of Head's declaration and paragraphs 3, 6-8, 10, 15-19, and 25-26

of Ben Shabat's declaration should be stricken. The following are just a few examples of this testimony offered by declarants:

- "Through every agreement negotiated, executed or contemplated, travel fulfillment was intended to be through partnership with Rovia, ideally but not exclusively. Ultimately, the APA in final form agreed to by the parties includes specific language allowing for Rovia to earn the business of Seacret with right-of-first refusal and meet-or-beat criteria. This clearly proposes that competitive fulfillment is an agreed option if Rovia either declines to serve Seacret direct or cannot meet the cost of a fulfillment of its competitors for the business of Seacret." E. Head Decl. (Mar. 24, 2021) ¶ 8; and

- "On or about October 7, 2020, I sent an email to Nugent, Poates, and Head expressing my concerns about a potential bankruptcy and suggesting that Seacret and WV agree to terminate the CMA." I. Ben Shabat Decl. (Mar. 24, 2021) ¶ 10.

The "Best Evidence" Rule dictates that the documents, videos, recordings, etc. speak for themselves and the declarants must offer the same into evidence—not the declarants' bald statements which fail to identify and/or relay the contents of any such documents, videos, and recordings. WorldVentures objects and moves to strike the Descriptive Testimony in the paragraphs identified above.

## IV. CONCLUSION AND PRAYER

WorldVentures respectfully requests that paragraphs and statements contained in the Declarations and identified herein be stricken and not considered as evidence for the preliminary injunction hearing and further requests all such other relief to which it is entitled.

DATED: March 25, 2021      Respectfully submitted by:

*/s/ Steven C. Lockhart*
Marcus A. Helt (TX 24052187)
Robert Slovak (TX 24013523)
Steven C. Lockhart (TX 24036981)
Aaron E. Chibli (TX 24091222)
Emily F. Shanks (TX 24110350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
mhelt@foley.com
rslovak@foley.com
slockhart@foley.com
achibli@foley.com
eshanks@foley.com

**COUNSEL FOR THE PLAINTIFFS SPHERATURE INVESTMENTS LLC, *et al* d/b/a WORLDVENTURES HOLDINGS, LLC**

### CERTIFICATE OF CONFERENCE

I hereby certify that, on March 25, 2021, the undersigned met and conferred with counsel for Defendant Head. Mr. Hoodenpyle indicated that due to hearing preparations, he was unable to review each of the objections to each of the paragraphs and therefore opposes the relief requested.

*/s/ Steven C. Lockhart*
Steven C. Lockhart

### CERTIFICATE OF SERVICE

I hereby certify that, on March 25, 2021, a true and correct copy of the foregoing document was served electronically on all parties in interest by the Court's ECF system and emailed to Mr. Head's counsel.

*/s/ Steven C. Lockhart*
Steven C. Lockhart