## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| SPHERATURE INVESTMENTS LLC | § | CASE NO. 20-42492 |
| et al. | § | |
| | § | |
| | § | |
| | § | |
| SPHERATURE INVESTMENTS LLC, | § | |
| et al. d/b/a World Ventures Holdings, LLC[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 21-04058 |
| | § | |
| KENNETH E. HEAD | § | |
| | § | |
| Defendants. | § | |

---

### MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)
### OF THE FEDERAL RULES OF CIVIL PROCEDURE OR, ALTERNATIVELY,
### MOMOTION FOR A MORE DEFINATE STATEMENT PURSUANT TO RULE 12(e)

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING _WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE_ SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR**

---

[1] The "**Debtors**" or "**WorldVentures**") in the above-described jointly administered Chapter 11 bankruptcy cases ("**Cases**") are Spherature Investments LLC ("**Spherature**") EIN#5471, Rovia, LLC ("**Rovia**") EIN#7705, WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**") EIN#3846, WorldVentures Marketplace, LLC ("**WV Marketplace**") EIN#6264, WorldVentures Marketing, LLC ("**WV Marketing**") EIN#3255, WorldVentures Services, LLC ("**WV Services**") EIN#2220.

---

**AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Defendant Kenneth E. Head ("**Defendant**" or "**Head**") file this Motion to Dismiss Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure, and in support shows the following:

## I.
## INTRODUCTION

1.      The Debtors' Original Complaint and Request For Preliminary Injunction (the "**Complaint**") should be dismissed because it fails to state a claim upon which relief can be granted.  As a threshold matter, the Debtors have based their Complaint and secured a Temporary Restraining Order (the "**TRO**") on the **WRONG** agreement, which has been superseded by another agreement that does not contain a prohibition on Head working in a competing business at all. Even in the event that the Court finds that the Debtors sued on the correct contract, the Debtors failed to inform the Court in their Complaint that they had consented in writing that Head could work at Seacret Direct, LLC ("**Seacret**"), and consequently, Debtors waived any breach of contract claim against Head.

2.      Alternatively, the Debtors' claims for breach of contract and breach of fiduciary duty based on the allegations that Head provided confidential information to Seacret should also be dismissed because of the Debtors' admission on the face of their Complaint that Debtors voluntarily provided to Seacret any information Debtors consider to be confidential. Moreover, the claims should also be dismissed because the Debtors' Complaint concerning allegations of

harm which are required elements of both Counts One and Two are legally insufficient because the Complaint only contains conclusory allegations about some sort of interference with the bankruptcy process and not any real facts as required by the United States Supreme Court in *Ashcroft v. Iqbal*. In addition, although the Debtors repeatedly told the Court at the TRO hearing and in their pleadings that they needed injunctive relief to prevent harm concerning their bankruptcy sale process, Debtors would not allow any discovery on the sale process in connection with the hearing on the preliminary injunction. Finally, since the first two Counts in the Complaint are legally insufficient as a matter of law, the Debtors have no grounds for an injunction and cannot show that they can succeed on the merits, which is one of the elements required for an injunction.

3.    The Debtors came to this Court representing that an Executive Employment Agreement (the "**Employment Agreement**") which is attached as Exhibit A to the Complaint was the operative agreement under which Head was restricted from competing with WorldVentures and used that Employment Agreement as a basis for obtaining an emergency hearing and the TRO. Debtors failed to disclose to this Court that Debtors and Head had executed a subsequent agreement - the WorldVentures Confidential and Proprietary Rights Agreement (the "**Applicable Agreement**."), which Debtors failed to attach to the Complaint.[2] The Applicable Agreement contains no prohibition on Head from working in a competing business. In their haste to prevent Head from working at all, the Debtors' sought emergency injunctive relief and failed to inform this Court of the Applicable Agreement. Debtors also failed to disclose to this Court that Debtors sent an email waiving in writing any prohibition of the solicitation of Head by Seacret and thereby waiving any right to enforce any restrictive covenant for non-competition against Head related to

---

[2] A true and correct copy of the Applicable Agreement is attached hereto as Exhibit B and incorporated by referenced herein (filed under seal).

his employment with Seacret.  Since the Debtors failed to state a claim upon which relief can be granted, the Complaint should be dismissed pursuant to Rule 12(b)(6) or, alternatively, the Debtors should be ordered to provide a more definite statement under Rule 12(e), both made applicable to this Adversary Proceeding under Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## II.
## ALLEGED FACTS

### A.      Head's Employment With WorldVentures.

4.      Head was hired by WV Holdings in 2007 and initially served in several executive roles including Vice President of Marketing and President of Americas.  Head did not sign any employment agreement or non-compete agreement when he was hired by WorldVentures.  In March 2017, Head was promoted to President of WV Marketing Holdings.[3]  Head did not sign a non-compete agreement at that time. In October 2015, Head added the title of Chief Strategy Officer.[4]  Again, at that time, Head did not sign any employment agreement or non-compete agreement.

5.      Debtors admit that Head had access to information that WorldVentures considers to be confidential and proprietary from the date Head started working for WorldVentures.[5]  Head never signed a non-compete or non-solicitation agreement before July 2018.[6]

6.      On July 12, 2018, Head signed the Employment Agreement.[7]  The Employment Agreement contained a non-compete covenant for the first time in Head's employment with WorldVentures.  However, Head had received information WorldVentures considers to be

---

[3] Dkt. 1-1, ¶¶ 3, 16.
[4] Dkt. 1-1, ¶ 3.
[5] Dkt. 1-1, ¶ 17.
[6] Dkt. 1-1, ¶ 16; Dkt. 1-1, Exhibit A.
[7] Dkt. 1-1, ¶ 16.

---

**MOTION TO DISMISS COMPLAINT – PAGE 4**

confidential or proprietary from Debtors for more than a decade without any non-compete

covenant.[8]

      7.     On October 4, 2018, WorldVentures and Head signed the Applicable Agreement.

Debtors had knowledge of the Applicable Agreement, but deliberately failed to disclose the

Applicable Agreement to the Court in either the Complaint or the Emergency Application for

Preliminary Injunction.[9] Section 10 of the Applicable Agreement provides as follows:

> "Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and <u>supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect so such subject matter</u>." (emphasis added)

The Applicable Agreement does not mention the Employment Agreement.

      8.     Section 15 of the Applicable Agreement provides for certain restrictive covenants:

> "**<u>Non-Solicitation.</u>**
>
> The Employee agrees that during the term of employment with the Employer and for a period of one (1) year following voluntary or involuntary termination of the Employee's employment form the Employer (the "Separation Date"), the Employee will not:
>
> - directly or indirectly (except on behalf of the Employer, solicit or attempt to solicit, accept business from, divert or attempt to divert, handle, or attempt to handle, or service or attempt to service, the account or business of any entity or individual:
>   (i)    That was a party to a contract with the Employer with which the Employee dealt or worked during the six-month period prior to the Separation Date, or
>   (ii)   That was directly solicited by the Employer with the Employee's involvement or assistance during the six-month period prior to the Separation Date, with a view toward establish a business relationship,
>
> or assist any other person in doing any of the foregoing; or

---

[8] Dkt. 1-1, ¶ 17.
[9] See Exhibit B.

- directly or indirectly recruit, solicit or hire any employee or independent contractor of the Employer, or induce or attempt to induce any such employee or independent contractor to terminate his/her/its contract or employment, or otherwise to limit or to cease the relationship of such employee or independent contractor with the Employer, or assist any other person in doing any of the foregoing, or

- directly or indirectly interfere or attempt to interfere in any way with the Employer's relationships with any of its customers, clients, sales representatives, suppliers, advisors, consultants, including, without limitation, by inducing or attempting to induce any customers, clients, sales representatives, suppliers, advisors, or consultants to terminate or change the terms of their dealings with the Employer, or assist any other person in doing any of the foregoing."

The Applicable Agreement contains no prohibition on working in a competing business. The restrictive covenants in the Applicable Agreement also do not provide any restrictions on geography or the scope of activity as required by Texas law.

9. At the beginning of 2020, WorldVentures' business was falling off and it was not paying commissions to Sales Representatives. Then, in March 2020, the COVID-19 pandemic hit and decimated WorldVentures' travel business.[10] WorldVentures started looking for a solution.[11]

10. When WorldVentures' failure to pay commissions to its Sales Representatives and the COVID-19 pandemic started to take its toll on the company, WorldVentures approached Seacret about the possibility of starting a new business relationship between the two companies.[12] Eventually, after several months of back-and-forth negotiations led by Wayne Nugent ("**Nugent**"), WorldVentures' Chief Strategy Office and the majority owner on behalf of WorldVentures, and Izhak Ben Shabat ("**Ben Shabat**"), Seacret's Chief Executive Officer, the two companies entered into a Co-Marketing Agreement ("**Co-Marketing Agreement**").[13] Pursuant to the Co-Marketing

---

[10] Dkt. 1-1, ¶ 22.
[11] Dkt. 1-1, ¶ 22.
[12] Dkt. 1-1, ¶ 22.
[13] Dkt. 1-1, ¶¶ 25, 26.

Agreement, WorldVentures was designated as an affiliate of Seacret permitting, WorldVentures to offer Seacret's products under certain conditions.[14]  Debtors allege that:

> "To that end, on July 22, 2020, WorldVentures and Seacret executed the co-marketing agreement, through whjch Seacret agreed to make its products available to WorldVentures' Sales Representatives to sell products."

The primary purpose of the Co-Marketing Agreement was to create another revenue stream for WorldVentures and its Sales Representatives while at the same time enlarging Seacret's customer base for its own products.[15]  The Sales Representatives now had a product to sell as the demand for travel had dropped dramatically.  Also, pursuant to the Co-Marketing Agreement, Seacret gained access to WorldVentures confidential and proprietary information.[16]

11.     Subsequently, representatives of WorldVentures and Seacret discussed terms for a potential acquisition that culminated in the execution of the Letter of Intent (the "**LOI**").[17]  Under the LOI, WorldVentures provided access to WorldVentures' confidential and proprietary information to Seacret.[18]  On November 10, 2020, Nugent, on behalf of Debtors, and Ben Shabat, on behalf of Seacret, executed the LOI.[19]

12.     While negotiating the LOI, WorldVentures' finances continued to deteriorate, and representatives continued to leave the company because they were not being paid their commissions.[20]  The parties negotiated and executed a Limited Solicitation Agreement ("**LSA**").[21]

---

[14] A true and correct copy of the Co-Marketing Agreement is attached hereto and incorporated be reference herein (filed under seal).

[15] Dkt. 1-1, ¶ 26.

[16] Dkt. 1-1, ¶ 25.

[17] A true and correct copy of the Letter of Intent is attached hereto as Exhibit C and incorporated by reference herein (filed under seal).

[18] Dkt. 1-1, ¶ 25

[19] See Exhibit C.

[20] Dkt. 1-1, ¶ 28.

[21] A true and correct copy of the Limited Solicitation Agreement is attached hereto as Exhibit D and incorporated by reference herein (filed under seal).

13.    The LSA provides that Seacret is allowed to solicit WV Marketing Sales Representatives as follows:

> "Seacret is immediately allowed to solicit any WVM Sales Representatives and enlist only such WVM Sales Representatives."

Section 1.3 of the LSA provides:

> "**WVM agrees that Seacret shall have unfettered access to WVM's database** (or other electronic materials and information) related to WVM's downline structure for the WVM Sales Representative.  Seacret agrees that such information is confidential and will treat it as such pursuant to the terms of this Agreement." (emphasis added)[22]

In fact in their Complaint, Debtors admit they voluntarily gave Seacret access to their confidential and proprietary information including the Exigo database:

> "Under the LSA, WorldVentures gave Seacret access to WorldVentures' confidential and proprietary information, including "unfettered" access to one of WorldVentures; most critical revenue-generating assets: the Exigo database containing the entirety of WorldVentures' Sales network"[23]

14.    During the negotiations of the LOI and the LSA, Debtors contemplated that certain of Debtors' executives would be hired by Seacret.  Debtors were considering layoffs to lower overhead expenses and potential prepare for a bankruptcy filing.  On November 18, 2020, Erik Haynes, Debtors' Chief Legal Officer, sent an email to Seacret waiving the LSA's prohibition of Seacret soliciting or hiring WorldVentures'' employees, and specifically identifying certain employees that would be excluded from the Section 1.5. prohibition.[24]  Head was included in the list of employees excluded from Seacret's prohibition of solicitation showing that Debtors explicitly authorized Seacret to hire Head.[25]

---

[22] See Exhibit D.
[23] Dkt. 1-1, ¶ 28; See Exhibit D.
[24] A true and correct copy of Eric Haynes' November 18, 2020 email is attached hereto as Exhibit E and incorporated by reference herein (filed under seal).
[25] See Exhibit E.

15.     On December 21, 2021, Debtors filed their voluntary petitions seeking relief under Chapter 11 of the United States Code with this Court.[26] On or about December 30, 2020, Head submitted his resignation to Debtors' CLO.[27]

## III.
## ALLEGATIONS THAT ARE FACUTAL AND LEGAL CONCLUSIONS

16.     Debtors' complaint is rife with allegations that are factual or legal conclusions.  The following citations to the Complaint are examples of these conclusory allegations for which the court may give no consideration under *Iqbal* and *Twombly*, but is not intended to be an exclusive list:

a.     Head exerted heavy influence as WorldVentures' President and CEO to persuade WorldVentures into entering these agreements with Seacret under false pretenses.[28]

b.     For example, Head disparaged and blamed other executives for WorldVentures' financial woes and commission payment delays.[29]

c.     He also met with Sales Representatives to pressure ownership to sell the company to Seacret. (There are no allegations of who he met with or what was discussed)

d.     Head spreadheaded these agreements in his role as President, but refused to disclose Seacret's intent to open a competing travel business and to use the access afforded by these agreements against WorldVentures to its competitive advantage.[30]

e.     Following on the heels of this co-marketing agreement and despite its non-solicitation provision, Head began facilitating the transfer of confidential

---

[26] Dkt. 1-1, ¶ 30.
[27] Dkt. 1-1, ¶ 30.
[28] Dkt. 1-1, ¶ 22.
[29] Dkt. 1-1, ¶ 23.
[30] Dkt. 1-1, ¶ 25.

information to WorldVentures Sales Representatives data to Seacret. [31]  (There are

no allegations as to how Head did so; to the contrary, Debtors admit that they did

so pursuant to the agreements).

f.      "Head did not stop there.  Head later pushed WorldVentures and Seacret's

November 10, 2021 letter of intent for an asset purchase agreement with

WorldVentures."[32]  (There are no allegations of actions taken by Head to "push"

the letter of intent.").

g.      Upon information and belief, Head ostensibly used the LSA as a pretext to lay the

groundwork for his move to Seacret and their coordinated effort to take-over

WorldVentures' travel business through recruitment of its entire downline and to

re-create the travel business at Seacret. [33]

h.      The entirety of paragraphs 34 through 54 are conclusory allegations.

## IV.
## MOTION TO DISMISS CAUSES OF ACTION ASSERTED BY PLAINTIFF PURSUANT TO RULE 12(b)(6)

## A.      Standards Of Pleading.

17.      A motion to dismiss challenges the sufficiency of a complaint under Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  Pleadings which state a claim for relief must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."[34]  Pursuant to

Fed. R. Civ. P. 8(a)(2), a statement showing such entitlement to relief must include "enough facts

to state a claim to relief that is plausible on its face."[35]  Claims "ha[ve] facial plausibility when the

---

[31] Dkt. 1-1, ¶26.
[32] Dkt, 1-1, ¶27
[33] Dkt. 1-1,  29.
[34] Fed. R. Civ. P. 8(a)(2).
[35] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36]  In determining whether a claim is facially plausible, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."[37]  "Determining whether a claim for relief is plausible is a context-specific task which requires the court to draw on its judicial experience and common sense."[38]

18.     In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must assert "more than labels and conclusions[;] *a formulaic recitation of the elements of the cause of action will not do*."[39]  Instead, "[f]actual allegations must be enough to raise a right of relief above the speculative level."[40]  If the properly-pleaded facts of a complaint do not permit a court to infer "more than the mere possibility of misconduct," then the pleader has not shown it is entitled to relief.[41]  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."[42]

19.     In *Iqbal*, the Supreme Court established a two-step process for determining whether a complaint raises a right to relief above the speculative level.  First, a court must identify any conclusory allegations, as they are "not entitled to the assumption of truth."[43]  Second, the court must consider if the assumption of truth attributed to the non-conclusory factual allegations

---

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556.
[37] *Id*.
[38] *Iqbal*, 556 U.S. at 679.
[39] *Twombly*, 550 U.S. at 555 (emphasis added), *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[40] *Id*.
[41] *Iqbal*, 556 U.S. at 679, *citing* Fed. R. Civ. P. 8(a)(2).
[42] *Id*., *citing Twombly*, 550 U.S. at 556
[43] *Iqbal*, 556 U.S. at 679; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) ("[W]e will not strain to find inferences favorable to the plaintiffs and we will not accept conclusory allegations, unwarranted deductions, or legal conclusions.").

plausibly suggests an entitlement to relief.[44]  Determining whether the allegations are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[45]

20.      "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[46]  Further, when a plaintiff expressly relies on the terms of a written document in a complaint, a defendant may proffer that document for use in a 12(b)(6) motion.[47]

21.      Alternatively, to the extent that the Court does not grant the motion to dismiss, the Debtors should be required to replead as required under Rule 12(e).  The allegations in the Complaint are so vague and ambiguous that the Defendant cannot reasonably prepare a response.

## V.
## ARGUMENT AND AUTHORITY

22.      In their Complaint, Debtors assert three different causes of action against Head, which are largely based on the Employment Agreement.  The causes of action include (1) Count One for breach of the Employment Agreement; (2) Count Two for breach of fiduciary duty and (3) Count Three for Injunctive Relief based on breach of the Employment Agreement.  All of the counts should be dismissed as a matter of law under Rule 12(b)(6) as incorporated into this Adversary under Federal Rule of Bankruptcy Procedure 7012 because they are factually and legally insufficient.

---

[44] *Id*.
[45] *Id*.
[46] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[47] *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013), cert. granted, vacated on other grounds.

**A.     Count One Is Based On An Employment Agreement Which Is No Longer In Effect And Should Be Dismissed.**

23.     Count One is subject to dismissal because it is factually unsupported.  Count One is entirely based on an alleged breach of the Employment Agreement.  However, Head's restrictive covenants contained in the July 12, 2018 Employment Agreement were superseded by the Applicable Agreement executed on October 4, 2018.  Since the Employment Agreement is no longer in effect and has been superseded by the Applicable Agreement, the Debtors cannot sustain Count One against Head as a matter of law.

24.     The elements of a breach of contract claim in Texas are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) the breach of that contract by the defendant and (4) damages sustained by the plaintiff as a result of the breach.[48]  The existence of a valid contract is the threshold element that the Debtors must prove to sustain Count One of its Complaint for breach of contract.[49]

25.     Debtors' breach of contract claim is based on their allegation that Head breached a non-compete covenant.  However, because the Employment Agreement has been superseded by the Applicable Agreement as set forth in paragraph 10 of the Applicable Agreement, Count One for breach of contract must be dismissed as a matter of law.

26.     Section 10 of the Applicable Agreement provides as follows:

"Unless specifically provided herein, **this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect so such subject matter**." (emphasis added)

---

[48]  *Mullens v. TestAmerica, Inc.*, 564 F. 3d 386 (5th Cir. 2009), citing *Aguilar v. Segal*, 167 S. W. 3d 443, 450 (Tex. App—Houston [14th Dist], 2005 pet. den'd).
[49] Dkt. 1-1, ¶¶36-39.

The Applicable Agreement does not mention the Employment Agreement. Accordingly, the Count One based on breach of the Employment Agreement must be dismissed as a matter of law because such an agreement has been superseded and is no longer a valid enforceable contract related to any claim for breach of a non-compete covenant.

**B.** **Alternatively, Count One Should Be Dismissed As The Debtor's Consented To Head's Employment At Seacret And Waived Any Right To Enforce Any Non-Compete Covenant.**

27.     If the Court finds that the Employment Agreement has not been superseded by the Applicable Agreement, Count One must still be dismissed because the Debtors consented to Seacret's hiring of Head, and waived any right to prevent Seacret's hiring of Head and waived enforcement of any non-compete covenant. Consequently, Debtors cannot prove a breach of the Employment Agreement and any claim for breach of contract has been waived.

28.     Under Texas law, a waiver is a voluntary relinquishment of a known right.[50] Waiver can also be inferred from a parties' conduct.[51] Texas courts have also concluded that "an obligee may waive the obligor's requirement for strict compliance with the terms of a contract if the obligee expressly or impliedly assents to the obligor's nonconforming conduct."[52]

29.     Previously, World Ventures and Seacret entered into the LSA which contained a prohibition on the solicitation of WorldVentures' employees by Seacret. On November 18, 2020, Haynes, Debtors' CLO, sent an email to Ben Shabat, Seacret's CEO, waiving the LSA's prohibition of Seacret soliciting or hiring WorldVentures' employees, and specifically identifying

---

[50] *Bott v. J.F. Shea Co., Inc.*, 388 F. 3d 530, 524-535 (5th Cir. 2004)(Condition precent waived in contract due to parties' conduct).
[51] *Id.*
[52] *Fairfield Financial Group v. Gawerc*, 814 S.W. 204, (Tex. Civ. Appeals—Houston [1st Dist]. 1991)(acceptance of late payments on a mortgage waived the bank's right to insist on strict compliance with the original repayment schedule).

certain employees that would be excluded from the Section 1.5. prohibition.  Head was included in the list of employees excluded from Seacret's prohibition of solicitation showing that Debtors explicitly authorized Seacret to hire Head.

30.     By its conduct and through the email permitting Head to work at Seacret, WorldVentures voluntarily relinquished any right they had to complain that Head had breached his Employment Agreement by working at Seacret.   In Count One, the Debtors assert "Head breached (and continues to breach) his Employment Agreement through his involvement with Seacret."[53]   Because WorldVentures consented in writing to Head working at Seacret, thereby waiving their right to enforce any non-compete agreement with Head, the allegations in Count One should be dismissed as a matter of law.

**C.**     **Count Two Of The Complaint Should Also Be Dismissed Because WorldVentures Consented To His Employment At Seacret.**

31.     Count Two of the Complaint also contains allegations that Head breached his fiduciary duty to World Ventures.  As factual support for the breach, WorldVentures argues that the breach occurred by "ultimately becoming Seacret's new global President."[54] Any allegations that such duty was breached on this basis should be dismissed because WorldVentures consented in writing to Seacret's solicitation of Head for a position at Seacret and relinquished any right to complain about Head working at Seacret or becoming its President.  Since WorldVentures waived its claim about Head's employment, which forms the basis for the breach of fiduciary duty claim, Count Two should be dismissed as a matter of law.

---

[53] See Dkt. 1-1, ¶ 38..
[54] See Dkt. 1-1, Paragraph 43.

**D.** **Counts One And Two Should Also Be Dismissed Because Head Did Not Breach Any Contractual Or Fiduciary Duties By Providing Confidential Information To Seacret As Worldventures Provided The Information To Seacret.**

32.    Counts One and Two must be dismissed as a matter of law because, on the face of the Complaint, Debtors admit they voluntarily provided information to Seacret, and Debtors failed to allege with specificity any action taken by Head to disclose confidential information that Head disclosed to Seacret not otherwise voluntarily disclosed by WorldVentures.. Count One contains allegations that Head breached the Employment Agreement by providing confidential information to Seacret.[55] Count Two is a breach of fiduciary duty claim which also implies that Head gave confidential information to Seacret.  Debtors' claims that Head provided WorldVentures' confidential information to Seacret is belied by the fact that Debtors voluntarily provided the Exigo database, and other information Debtors claim to be confidential, to Seacret as provided by the terms of the LSA.  On the face of their Complaint, the Debtors admit that "WorldVentures gave Seacret access to WorldVentures' confidential and proprietary information" including "unfettered" access to the Exigo database.[56]  Assuming the facts of the Complaint in the most favorable light to the Debtors, the Complaint contains an admission that the confidential information was provided to Seacret by WorldVentures rather than by Head.  Accordingly, Counts One and Two should be dismissed for failure to state a claim.

**E.** **Count Two Is Insufficient As Drafted Because It Does Not Name Any Representatives That Head Solicited.**

33.    Count Two should also be dismissed because it contains conclusory allegations that Head is recruiting employees and Sales Representatives.  Debtors failed to support such conclusory allegations with facts.  Count Two does not contain any names of employees or representatives

---

[55] See Dkt. 1-1., Paragraph 38.
[56] See Dkt. 1-1, ¶ 28.

that Head allegedly recruited.  As the Supreme Court stated in *Ashcroft v. Iqbal*, in determining whether a claim is facially plausible, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."[57]  Because the only allegations related to solicitation of employees or Sales Representatives are conclusory, Count Two for breach of fiduciary duty must be dismissed as a matter of law.

**F.**     **Counts One And Two Are Insufficient As Drafted Because The Complaint Does Not Sufficiently Allege Any Harm.**

34.     The Debtors have not sufficiently pled harm which is a required element for both Counts One and Two.  With respect to Count One, the Debtors have simply said that as a result of the breaches of the Employment Agreement, "WorldVentures has suffered economic damages, lost profits and loss of goodwill."[58]  Concerning Count Two, the Debtors have pled conclusory allegations accusing Head of "dissipation of WorldVentures assets" and "disruption of the orderly administration of the estate." and a general statement that "WorldVentures has suffered and continues to suffer irreparable harm" with no explanation at all.  These are simply conclusions and are not facts, which are legally insufficient under the Supreme Court case of *Ashcroft v. Iqbal.* Based on their factual allegations and position in discovery, Debtors cannot show any harm. Debtors' claims for breach of contract and breach of fiduciary duty must be dismissed as a matter of law because they failed to allege any harm with specificity.

---

[57] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556.
[58]  See Dkt. 1-1¶39.

## G.    Debtors Are Not Entitled To Obtain Injunctive Relief Based On A Contract No Longer In Effect.

35    Finally, Count Three is based on injunctive relief for violations of Counts One and Two – breach of contract and breach of fiduciary duty.  Courts within the Fifth Circuit look to the following criteria to determine whether a preliminary injunction should be issued:

> (1)    whether a substantial likelihood exists that the plaintiff will succeed on the merits;
>
> (2)    whether there is a substantial threat of irreparable injury if the injunction is not granted;
>
> (3)    whether the threatened injury to the movant outweighs the threatened injury to the respondent; and
>
> (4)    whether the granting of the preliminary injunction will disserve the public interest.[59]

Relief should be granted only if the party seeking relief has carried the burden of persuasion as to all four elements.[60]  The purpose of an injunction is to preserve the *status quo*.[61]  "We have cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements,"[62]

36.    Debtors allege that Head breached the Employment Agreement and that he breached fiduciary duties owed to Debtors.  Debtors cannot show a substantial likelihood exists that Debtors will succeed on the merits of either claim.

---

[59] *In re Electro-Motor, Inc.*, 390 B.R. 859, 866 (Bankr. E.D. Tex. 2008), citing *Ridgely v. Fed. Emergency Mgmt. Agency,* 512 F.3d 727, 734 (5th Cir.2008).
[60] *Dinovo v. Fed. Bureau of Prisons,* 2008 WL 859194 * 1 (E.D.Tex., Mar. 27, 2008).
[61] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir.2011).
[62] *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 748 (S.D. Tex. 2009), citing *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 196 (5th Cir.2003).

**i.      Debtors Cannot Show A Substantial Likelihood Of Success On The Breach Of Contract Claim Because Debtors Sued On The Wrong Agreement And Waived Any Right Of Enforcement of the Agreement.**

37.      In the Complaint, Debtors claim that Head breached the Employment Agreement. As detailed above, the Applicable Agreement provides that it supersedes any prior agreement, except as otherwise stated in the Applicable Agreement.  Debtors' representatives agree that the Applicable Agreement does not mention the Employment Agreement.  Because the Applicable Agreement does not mention the Employment Agreement, the Applicable Agreement does not provide any exception to the language in Section 10 that the Applicable Agreement supersedes the Employment Agreement.

38.      Additionally, Debtors waived any right to enforce the non-compete covenant when Debtors granted Seacret the right to hire Head.  Under Texas law, "waiver is a voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming the right.[63]

39.      After WorldVentures and Seacret signed the LOI and the LSA, WorldVentures, through its CLO, Haynes, send an email to Seacret explicitly and intentionally waiving any right to enforce Section 1.5 of the LSA.  By that waiver of Section 1.5 of the LSA, WorldVentures granted Seacret the right to hire Head.

40.      Moreover, as detailed above Debtors have not shown, and cannot show, that Head gave any information to Seacret that Debtors did not otherwise voluntarily provide to Seacret.  As stated in the LSA, Debtors voluntarily provided their so-called confidential and proprietary information to Seacret.

---

[63] *Slaughter-Cooper v. Kelsey Seybold Med. Grp. P.A.*, 379 F.3d 285, 290 (5th Cir. 2004).

## VI.
## ALTERNATIVELY, IF THE COURT CONSIDERS MATTERS OUTSIDE OF THE PLEADINGS PURSUANT TO RULE 12(d), MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

41.    To the extent the Court considers matters outside of the pleadings, Head requests

that the Court treat this as a motion for summary judgment pursuant to Rule 56.

## VII.
## ALTERNATIVELY, IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS, THE COURT SHOULD ORDER PLAINTIFFS TO FILE AND SERVE A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(E)

42.    Fed. R. Civ. P. 12(e) provides in pertinent part that:

a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion [for more definite statement] ... must point out the defect complained of and the details desired.

If a court is presented with an appropriate motion for more definite statement under Fed. R. Civ.

P. 12(e), the court "shall grant the motion and demand more specific factual allegations from the

plaintiff concerning the conduct underlying the claims for relief."[64]

43.    Here, the Complaint contains grossly insufficient factual allegations to support

Debtors' claims for breach of contract and breach of fiduciary duty.  Debtors failed to allege

sufficient facts to show Head breached any agreement or breached any fiduciary duty.  Debtors

failed to allege sufficient facts that Head disclose confidential information to Seacret.  Debtors

failed to allege sufficient facts that Head solicited employees or Sales Representatives.  Debtors

failed to allege sufficient facts that they have been harmed.

---

[64] *Thomas v. Independence Township*, 463 F.3d 285, 301 (3rd Cir. 2006).

44.     Accordingly, the Complaint is so vague or ambiguous that Head cannot reasonably prepare a response.[65]  As a result, if this Court does not dismiss Counts one, two and three pursuant to Rule 12(b)(6), or if it dismisses only portions of the Complaint, the Court should order Debtors to file and serve a more definite statement of their claims against Head in accordance with Fed. R. Civ. P. 12(e).

## CONCLUSION

The Complaint should be dismissed because Debtors failed to state a claim as a matter of law.  The Debtors have sued on the wrong agreement, which is a fatal flaw in Count One.  The Applicable Agreement does not contain restrictive covenants prohibiting Head from competing. Further Debtors waived their rights to enforce any non-compete covenant by intentionally relinquishing any right to prevent Seacret from hiring Head.  Debtors' claim for breach of contract and breach of fiduciary duty claims must be dismissed because, on the face of the Complaint, Debtors admit they provided confidential information to Seacret, and failed to allege that Head provided any confidential information to Seacret that Debtors did not otherwise voluntarily provide to Seacret.  Finally, the Debtors failed alleged any harm on the face of the Complaint, but merely assert legal conclusions.  For all these reasons, Head respectfully requests that the Court dismiss the Complaint and grant such other and further relief to which Head may be entitled.

---

[65] Fed. R. Civ. P. 12(e); *Thomas*, 463 F.3d at 301.

Respectfully submitted,

SINGER & LEVICK, P.C.


By:    /s/Todd A. Hoodenpyle     
       Todd A. Hoodenpyle
       State Bar No. 00798264
       hoodenpyle@singerlevick.com
       Michelle E. Shriro
       State Bar No. 18310900
       mshriro@singerlevick.com
16200 Addison Road, Suite 140
Addison, Texas 75001
Tel. (972) 380-5533
Fax (972) 380-5748

ATTORNEYS FOR DEFENDANT
KENNETH E. HEAD

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District and upon the following parties via electronic mail on March 25, 2021.

**Via Email:**  slockhart@foley.com

Steven C. Lockhart
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201


     /s/Todd A. Hoodenpyle     
       Todd A. Hoodenpyle