## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **SPHERATURE INVESTMENTS LLC** | § | **CASE NO. 20-42492** |
| **et al.** | § | |
| | § | |
| | § | |
| _____ | § | |
| | § | |
| **SPHERATURE INVESTMENTS LLC,** | § | |
| **et al. d/b/a World Ventures Holdings, LLC[1]** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Adversary No. 21-04058** |
| | § | |
| **KENNETH E. HEAD** | § | |
| | § | |
| **Defendants.** | § | |

---

### DEFENDANT'S AMENDED MOTION TO DISMISS COMPLAINT
### PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF
### CIVIL PROCEDURE OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE
### STATEMENT PURSUANT TO RULE 12(e), AND
### MOTION TO STRIKE PURSUANT TO RULE 12(f)

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING *WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE* SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN**

---

[1] The "**Debtors**" or "**WorldVentures**") in the above-described jointly administered Chapter 11 bankruptcy cases ("**Cases**") are Spherature Investments LLC ("**Spherature**") EIN#5471, Rovia, LLC ("**Rovia**") EIN#7705, WorldVentures Marketing Holdings, LLC ("**WV Marketing Holdings**") EIN#3846, WorldVentures Marketplace, LLC ("**WV Marketplace**") EIN#6264, WorldVentures Marketing, LLC ("**WV Marketing**") EIN#3255, WorldVentures Services, LLC ("**WV Services**") EIN#2220.

---

**AMENDED MOTION TO DISMISS COMPLAINT – PAGE 1**

**A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Defendant Kenneth E. Head ("**Defendant**" or "**Head**") files this Defendant's Amended Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, Alternatively, Motion for a More Definite Statement Pursuant to Rule 12(e), and Motion To Strike Pursuant To Rule 12(f), as made applicable by Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure, and in support shows the following:

## I. INTRODUCTION

1.       The Debtors' Original Complaint and Request for Preliminary Injunction (the "**Complaint**") should be dismissed because it fails to state a claim upon which relief can be granted.  The Debtors' claims for breach of contract and breach of fiduciary duty based on the allegations that Head provided confidential information to Seacret must be dismissed because of the Debtors' admission on the face of their Complaint that Debtors voluntarily provided to Seacret any information Debtors consider to be confidential. Moreover, the claims should also be dismissed because the Debtors' Complaint concerning allegations of harm which are required elements of both Counts One and Two are legally insufficient because the Complaint only contains conclusory allegations about some sort of interference with the bankruptcy process.  Plaintiffs failed to allege any facts to give rise to a plausible claim for damage under either breach of contract or breach of fiduciary duty as required by the United States Supreme Court in *Ashcroft v. Iqbal*. In addition, although the Debtors repeatedly told the Court at the TRO hearing and in their pleadings that they needed injunctive relief to prevent harm concerning their bankruptcy sale

process, Debtors would not allow any discovery on the sale process in connection with the hearing on the preliminary injunction.  Finally, since the first two Counts in the Complaint are legally insufficient as a matter of law, the Debtors have no grounds for an injunction and cannot show that they can succeed on the merits, which is one of the elements required for an injunction.  Because the Debtors failed to state a claim upon which relief can be granted, the Complaint should be dismissed pursuant to Rule 12(b)(6) or, alternatively, the Debtors should be ordered to provide a more definite statement under Rule 12(e), both made applicable to this Adversary Proceeding under Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## II. ALLEGED FACTS

2.      In its Complaint, the Debtors have alleged certain facts and the purpose of this motion, Head has set forth these alleged facts below but by doing so, Head is not admitting to the truth of such facts and reserves all rights to dispute such facts and allegations.

3.      From 2017 through January 2021, Head served as WorldVentures' President and Chief Strategy Officer ("CSO").[2]  As President and CSO, Head owed WorldVentures contractual and fiduciary duties and was obligated to put WorldVentures' interests before his own and faithfully and diligently further the business and interests of WorldVentures.[3]

4.      Through his employment with WorldVentures, Head had unrestricted access to WorldVentures' confidential and proprietary information.[4]  By way of example, Head had access to WorldVentures' database managed by the direct selling software platform Exigo Office Inc. ("**Exigo**"), which contains detailed information regarding WorldVentures' sales representatives

---

[2] Dkt. 1-1, ¶ 16.
[3] Dkt. 1-1, ¶ 16. [conclusory allegation]
[4] Dkt. 1-1, ¶ 17. [conclusory allegation]

and information regarding their respective downlines.[5]  Head also had unfettered access to WorldVentures' travel products and services; its customers, members, employees, sales representatives, vendors, suppliers, financial information; business know-how and trade secrets of WorldVentures; sales and marketing programs and techniques of WorldVentures; business, computer, employee, and other programs and systems developed or used by WorldVentures; compensation and benefits paid of officers, managers, employees, independent contractors, and other representative of WorldVentures.[6]

5.       WorldVentures alleges facts in reference to the Employment Agreement, including conclusory allegations related to the Employment Agreement.[7]

6.       With Head as President and CSO, WorldVentures experienced a rapid decline in its revenue.[8]  This, along with the drastic change in the travel industry wrought by COVID-1(, led WorldVentures into executing a series of agreements with Seacret to purportedly boost income and morale of the company and provide products for Sales Representatives to sell, while simultaneously providing a capital infusion.[9]  Head exerted heavy influence as WorldVentures' President and CSO to persuade WorldVentures into entering these agreements with Seacret under false pretenses.[10]

---

[5] Dkt. 1-1, ¶ 17.
[6] Dkt. 1-1, ¶ 17.
[7] Dkt. 1-1, ¶ 18-21.
[8] Dkt. 1-1, ¶ 22. [conclusory allegation]
[9] Dkt. 1-1, ¶ 22. [conclusory allegation]
[10] Dkt. 1-1, ¶ 22. [conclusory allegation]

7.     For example, Head disparaged and blamed other executives for WorldVentures' financial woes and commission payment delays.[11]  He also met with Sales Representatives to pressure ownership to sell the company to Secret.[12]

8.     Seacret (like WorldVentures) uses a multi-level network of independent sales representatives to sell its products.[13]  However, before it poached WorldVentures executives, top producers, and confidential information, Seacret never sold travel products.[14]  Nor was Seacret affiliated with the travel industry.[15]  Seacret, historically, was ***not*** a "Competing Business" as defined by Head's Employment Agreement because its products and services were wholly unrelated.[16]  Whereas WorldVentures' network of sales representatives sold travel related products and services, Seacret's sales network primarily sold dietary supplements and nutritional and skincare products.[17]

9.     Now, due to WorldVentures' and Seacret's execution of a co-marketing agreement, a letter of intent to purchase WorldVentures' assets, and a limited solicitation agreement, Seacret has gained access to WorldVentures' confidential and proprietary information as well as its downline travel sales network through false pretenses.[18]  Head spearheaded these agreements in his role as President, but refused to disclose Seacret's intent to open a competing travel business and to use the access afforded by these agreements against WorldVentures to its competitive advantage.[19]

---

[11] Dkt. 1-1, ¶ 23. [conclusory allegation]
[12] Dkt. 1-1, ¶ 23. [conclusory allegation]
[13] Dkt. 1-1, ¶ 24.
[14] Dkt. 1-1, ¶ 24. [conclusory allegation]
[15] Dkt. 1-1, ¶ 24. [conclusory allegation]
[16] Dkt. 1-1, ¶ 24. [conclusory allegation]
[17] Dkt. 1-1, ¶ 24.
[18] Dkt. 1-1, ¶ 25. [admission to disclosure of confidential information; conclusory allegation as to false pretenses]
[19] Dkt. 1-1, ¶ 25. [conclusory allegation]

10.    To that end, on July 22, 2020, WorldVentures and Seacret executed the co-marketing agreement, through which Seacret agreed to make its products available to WorldVentures' Sales Representatives to sell such products.[20]  Following on the heels of this co-marketing agreement and despite its non-solicitation provision, Head began facilitating the transfer of confidential information to WorldVentures Sales Representatives data to Seacret.[21]

11.    Head did not stop there.[22]  Head later pushed WorldVentures and Seacret's November 10, 20201 letter of intent for an asset purchase agreement with WorldVentures.[23] Pursuant to that LOI, Seacret purported to intend to purchase WorldVentures' assets and thus effectively terminate the co-marketing agreement.

12.    However, the next day, under financial duress and over opposition to others in the company WorldVentures and Seacret executed a Limited Solicitation Agreement ("LSA").[24] Under the LSA, Seacret was allowed to use WorldVentures' exclusive network of Sales Representatives and sales network to sell Seacret's line of dietary, nutritional, and skincare products.[25]  In exchange, Seacret agreed to pay WorldVentures a product-sales royalty based on the amount of Seacret products sold by WorldVentures' Sales Representatives.[26]  Under the LSA, WorldVentures gave Seacret access to WorldVentures' confidential and proprietary information, including "unfettered" access to one of WorldVentures' most critical revenue-generating assets: the Exigo database containing the entirety of WorldVentures sales' network.[27]

---

[20] Dkt. 1-1, ¶ 26. [admission]
[21] Dkt. 1-1, ¶ 26. [conclusory allegation]
[22] Dkt. 1-1, ¶ 27. [conclusory allegation]
[23] Dkt. 1-1, ¶ 27. [conclusory allegation]
[24] Dkt. 1-1, ¶ 28.
[25] Dkt. 1-1, ¶ 28. [admission]
[26] Dkt. 1-1, ¶ 28.
[27] Dkt. 1-1, ¶ 28. [admission]

13.     Indeed, WorldVentures was led to believe these agreements would help its sales network overcome a prolonged reduction in sales revenue, providing temporary liquidity and allowing WorldVentures Sales Representatives to generate additional revenue through sales of Seacret's non-travel products.[28] WorldVentures did not understand that the LSA to enable Seacret to develop its own competing membership-based travel business.[29] Upon information and belief, Head ostensibly used the LSA as a pretext to lay the groundwork for his move to Seacret and their coordinated effort to take-over WorldVentures' travel business through recruitment of its entire downline and to re-create the travel business at Seacret.[30] Of course, had Had and/or Seacret disclosed their intent to open a competing travel business, WorldVentures would never have entered into these agreements.[31]

14.     Shortly after WorldVentures filed for bankruptcy protection on December 21, 2020, Head resigned as President and CSO of WorldVentures on or around December 30, 2020.[32] After resigning, Head quickly resurfaced as the worldwide President and Chief Business Development Officer of Seacret in mid-to-late January.[33] Just a few short days later, Seacret announced its intent to launch a competing "lifestyle" travel company.[34] Of course, Head's new role expressly violates his non-compete restrictions in the Employment Agreement.[35]

15.     The timing of these two events is not coincidental.[36] Indeed, in a video on January 29, 2021, Eddie sat beside Seacret's founder, Izhak Ben Shabat where he announced Seacret is

---

[28] Dkt. 1-1, ¶ 29 [conclusory allegation]
[29] Dkt. 1-1, ¶ 29 [conclusory allegation]
[30] Dkt. 1-1, ¶ 29 [conclusory allegation]
[31] Dkt. 1-1, ¶ 29 [conclusory allegation]
[32] Dkt. 1-1, ¶ 30.
[33] Dkt. 1-1, ¶ 30.
[34] Dkt. 1-1, ¶ 30.
[35] Dkt. 1-1, ¶ 30. [conclusory allegation]
[36] Dkt. 1-1, ¶ 31. [conclusory allegation]

"tak[ing] one of the unique travel experiences in the world [i.e., WorldVentures' travel experience] and implement[ing] the program over […] at Seacret."[37]  Shabat also announced "what Eddie [Head] has done [to put] together this [travel] program with [Seacret's] vendors."[38]  It is beyond refute that Head is leading Seacret's implementation of WorldVentures' travel platform.[39]

16.    Head effectively admits as much in Seacret's January 29 online video, which promotes Seacret's new travel membership platform.[40]  Among other things, Head says: (a) "we have been grooming a global team and we brought in some of the best talent we could;" (b) "we want to make sure that we partner with the very best suppliers and vendors around the planet;" (c) "we have a duty to uphold this brand and to protect this brand;" and (d) "you are going to be able to take advantage of this membership all over the world."[41]  The "brand" Head is referring to is, undoubtedly, the WorldVentures' DreamTrips brand, as Seacret has no travel services brand.[42]  Likewise, the "global team" is former members of WorldVentures' management and its sales representatives stolen with Head's assistance—as evidenced by their participation and attendance in Seacret's recent online videos.[43]  Notably, and upon information and belief, Seacret's first travel product is supplied by an exclusive WorldVentures' vendor.[44]

17.    Indeed, other former WorldVentures representatives have publicly announced: "Seacret can move forward aggressively and very quickly on rolling out our own travel product ... whether that's called Seacret Escapes … or Seacret Getaways, they are working on the branding

---

[37] Dkt. 1-1, ¶ 31.
[38] Dkt. 1-1, ¶ 31.
[39] Dkt. 1-1, ¶ 31. [conclusory allegation]
[40] Dkt. 1-1, ¶ 32. [conclusory allegation]
[41] Dkt. 1-1, ¶ 32.
[42] Dkt. 1-1, ¶ 32. [conclusory allegation]
[43] Dkt. 1-1, ¶ 32. [conclusory allegation as to "Head's assistance"]
[44] Dkt. 1-1, ¶ 32. [conclusory allegation]

for that, but we are fast-tracking our own travel product, which will be very similar to what many of us [meaning WorldVentures] are used to, [with] group trips, wholesale pricing, . . . [and] a whole-sale booking engine."[45] And Seacret is even using WorldVentures' travel agents to promote near-duplicates of DreamTrips in violation of "exclusivity" agreements.[46]

18.     In short, after facilitating Seacret's access to the most vital competitive information regarding WorldVentures' business and days after WorldVentures filed bankruptcy, Head resigned to lead Seacret's "lifestyle" business designed to trade off WorldVentures' "brand," stealing WorldVentures' "global team" to do so.[47] In so doing, Head thereby preserved his own financial welfare while further deteriorating the financial welfare of WorldVentures and its respective creditors.[48]

19.     In paragraphs 35 through 56 of its Complaint, Plaintiffs allege their causes of action.  The entirety of paragraphs 35 through 56 are conclusory allegations.

### III. MOTION TO DISMISS CAUSES OF ACTION ASSERTED BY PLAINTIFF PURSUANT TO RULE 12(b)(6)

**A.     Standards of Pleading.**

20.     A motion to dismiss challenges the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pleadings which state a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[49] Pursuant to Fed. R. Civ. P. 8(a)(2), a statement showing such entitlement to relief must include "enough facts to state a claim to relief that is plausible on its face."[50] Claims "ha[ve] facial plausibility

---

[45] Dkt. 1-1, ¶ 33.
[46] Dkt. 1-1, ¶ 33.
[47] Dkt. 1-1, ¶ 34. [conclusory allegation]
[48] Dkt. 1-1, ¶ 34. [conclusory allegation]
[49] Fed. R. Civ. P. 8(a)(2).
[50] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."[51]  In determining whether a claim is

facially plausible, "[t]hreadbare recitals of the elements of the cause of action, supported by mere

conclusory statements, do not suffice."[52]  "Determining whether a claim for relief is plausible is

a context-specific task which requires the court to draw on its judicial experience and common

sense."[53]

21.    In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a

complaint must assert "more than labels and conclusions[;] *a formulaic recitation of the elements*

*of the cause of action will not do*."[54]  Instead, "[f]actual allegations must be enough to raise a right

of relief above the speculative level."[55]  If the properly-pleaded facts of a complaint do not permit

a court to infer "more than the mere possibility of misconduct," then the pleader has not shown it

is entitled to relief.[56]  "[O]nly a complaint that states a plausible claim for relief survives a motion

to dismiss."[57]

22.    In *Iqbal*, the Supreme Court established a two-step process for determining whether

a complaint raises a right to relief above the speculative level.  First, a court must identify any

conclusory allegations, as they are "not entitled to the assumption of truth."[58]  Second, the court

must consider if the assumption of truth attributed to the non-conclusory factual allegations

---

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556.

[52] *Id*.

[53] *Iqbal*, 556 U.S. at 679.

[54] *Twombly*, 550 U.S. at 555 (emphasis added), *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[55] *Id*.

[56] *Iqbal*, 556 U.S. at 679, *citing* Fed. R. Civ. P. 8(a)(2).

[57] *Id*., *citing Twombly*, 550 U.S. at 556

[58] *Iqbal*, 556 U.S. at 679; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) ("[W]e will not strain to find inferences favorable to the plaintiffs and we will not accept conclusory allegations, unwarranted deductions, or legal conclusions.").

plausibly suggests an entitlement to relief.[59]  Determining whether the allegations are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[60]

23.      "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[61]  Further, when a plaintiff expressly relies on the terms of a written document in a complaint, a defendant may proffer that document for use in a 12(b)(6) motion.[62]

24.      In their Complaint, Debtors assert two different causes of action against Head, which are largely based on the Employment Agreement.  The causes of action include (1) Count One for breach of the Employment Agreement; and (2) Count Two for breach of fiduciary duty. Debtors also seek injunctive relief under count three, which is not a cause of action.  Debtors' Complaint is rife with conclusory allegations.  All of the counts should be dismissed as a matter of law under Rule 12(b)(6) as incorporated into this Adversary under Federal Rule of Bankruptcy Procedure 7012 because they are factually and legally insufficient.

**B.**      **Count One should be dismissed because it is wholly based on conclusory allegations.**

25.      Count One for breach of contract must be dismissed because it is based on conclusory allegations unsupported by facts that give rise to a plausible claim.  The elements of a breach of contract claim in Texas are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) the breach of that contract by the defendant and (4)

---

[59] *Id.*

[60] *Id.*

[61] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[62] *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013), cert. granted, vacated on other grounds.

damages sustained by the plaintiff as a result of the breach.[63]  Debtors failed to allege sufficient

facts of breach of an agreement or damages to give rise to a plausible claim for breach of contract.

26.    Plaintiffs allege that Head breached the Employment Agreement through his "use

and/or disclosure of WorldVentures' confidential information."[64]  Debtors' conclusory allegations

related to this claim include the following which are summarized below with the Debtors'

allegations on the left of the chart along with Head's response on the right:

| | |
|---|---|
| "Head exerted heavy influence as WorldVentures' President and CSO to persuade World Ventures into entering these agreements with Seacret under false pretenses."[65] | Debtors failed to allege who Head exerted influence upon or persuaded to enter these agreements, how Head used "heavy influence." |
| "Head spearheaded these agreements in his role as President, but refused to disclose Seacret's intent to open a competing travel business and to use the access afforded by these agreements against WorldVentures to its competitive advantage."[66] | Debtors failed to allege any facts to support the conclusion that Head "spearheaded" anything, much less the disclosure of WorldVentures' information to Seacret. |
| "Following on the heels of this co-marketing agreement and despite its non-solicitation provision, Head began facilitating the transfer of confidential information to WorldVentures Sales Representatives data to Seacret."[67] | Debtors failed to allege a single fact as to how Head facilitated the transfer of information to Seacret, failed to allege when such acts occurred, how such facilitation occurred, or what information was transferred by Head. |
| "Head did not stop there.  Head later pushed WorldVentures and Seacret's November 10, 2021 letter of intent for an asset purchase agreement of WorldVentures."[68] | Debtors failed to allege what Head did to "push" the LOI, who Head "pushed," or how such "pushing" resulted in Head disclosing any information to Seacret. |
| "Upon information and belief, Head ostensibly used the LSA as a pretext to lay the groundwork for his move to Seacret and | Debtors failed to alleged how Head used the LSA as a pretext.  This allegation is solely made upon information and belief |

---

[63]  *Mullens v. TestAmerica, Inc.*, 564 F. 3d 386 (5th Cir. 2009), citing *Aguilar v. Segal*, 167 S. W. 3d 443, 450 (Tex. App—Houston [14[th] Dist], 2005 pet. den'd).
[64] Dkt. 1-1, ¶ 38.
[65] Dkt. 1-1, ¶ 22.
[66] Dkt. 1-1, ¶ 25.
[67] Dkt. 1-1, ¶ 26.
[68] Dkt. 1-1, ¶ 27.

| | |
|---|---|
| their coordinated effort to take-over WorldVentures' travel business through recruitment of its entire downline and to re-create the travel business of Seacret."[69] | and not as a factual assertion. In fact, based on what is known in this case as to the waiver email, this conclusory allegation has no basis in fact. |
| "In short, after facilitating Seacret's access to the most vital competitive information regarding WorldVentures' business and days after WorldVentures filed bankruptcy, Head resigned to lead Seacret's "lifestyle" business designed to trade off WorldVentures' "brand," stealing WorldVentures' "global team" to do so."[70] | Debtors failed to allege any fact as to how Head facilitated Seacret's access to WorldVentures' "most vital competitive information," what information to which Head facilitated access, or when Head purportedly facilitated such access. |

27.     Debtors failed to allege a single fact to support these conclusory allegations. Debtors did not allege any facts as to what information Head used or disclosed to Seacret or anyone else outside of WorldVentures. Debtors failed to allege any fact as to when such use or disclosure occurred. Debtors failed to allege to whom specifically Head made any such disclosure.

28.     Additionally, Debtors must allege a plausible claim that they have been damaged by any such breach. As for damages on their breach of contract claim, Debtors allege the following conclusory allegations which are summarized below with the Debtors' allegations on the left and Head's responses on the right:

| | |
|---|---|
| "As a result of Head's breaches of his Employment Agreement and the Non-Compete Provisions both during and after his employment, WorldVentures has suffered economic damages, lost profits, and/or loss of goodwill in amounts in excess of the jurisdictional limits of this Court, as well as damage to its ability to effectuate a successful chapter 11 bankruptcy."[71] | Debtors failed to allege a single fact as to damage related to the breach of contract claim. Debtors failed to allege what profits it has lost. Debtors failed to allege a single fact identifying any Sales Representative, vendor or supplier that they lost and was attributable to action or inaction by Head. Debtors failed to allege a single fact as to how Head's actions impact Debtors' "ability to effectuate a successful chapter 11 bankruptcy." To the contrary, in the |

---

[69] Dkt. 1-1, ¶ 29.
[70] Dkt. 1-1, ¶ 34.
[71] Dkt. 1-1, ¶ 39.

|  | expedited discovery, Debtors refused to allow Head to conduct any discovery on this claim. |
|---|---|
| "In so doing, Head thereby preserved his own financial welfare while further deteriorating the financial welfare of WorldVentures and its respective creditors." | Debtors failed to allege a single fact in support of this conclusion. Debtors failed to allege any fact that its financial welfare is deteriorating because of any use or disclosure by Head of any confidential information or otherwise. |

29.     Debtors' allegations as to any each of contract related to the use or disclosure of confidential information does not meet the requirements of *Iqbal* and *Twombly*.  Count One for breach of contract must be dismissed as a matter of law.

**C.    Count Two should be dismissed because it is wholly based on conclusory allegations.**

30.     Count Two for breach of fiduciary duty must be dismissed because it is based on conclusory allegations unsupported by facts that give rise to a plausible claim.  Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages.[72]  Debtors failed to allege sufficient facts of breach of fiduciary duty or damages to give rise to a plausible claim for breach of fiduciary duty.

31.     Plaintiffs generically allege that Head "owed fiduciary duties, including but not limited to the duty of loyalty, good faith, due care, and fair dealing, and candor."[73]  Debtors' conclusory allegations related to this claim include the following which are summarized below with the Debtors' allegations on the left and Head's responses on the right:

| "Through Head's misconduct and actions alleged during and after his employment with WorldVentures, Head willfully and intentionally breached such duties to the | Debtors failed to allege the "misconduct and actions" to which they refer.  Debtors failed to allege which duty Head allegedly breached, how Head breached any such |
|---|---|

---

[72] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017), citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010).
[73] Dkt. 1-1, 41.

| | |
|---|---|
| detriment of WorldVentures, its estate and its creditors." | duty, or when Head breached any duty. Debtors failed to allege how such breach was to the detriment of WorldVentures, its estate and its creditors. |
| "Specifically, through Head's aforementioned actions and omissions, including facilitating the execution of the LSA and other agreements, soliciting WorldVentures employees and Sales Representatives to work for a competing business and, ultimately become Seacret's new global president, leading Seacret's launch of its own implementation of WorldVentures; travel products, Head breached fiduciary duties of care and loyalty and has usurped corporate opportunities." | Debtors failed to describe the "aforementioned actions and omissions." Debtors failed to allege any facts to support that facilitation of the "execution of the LSA" was a breach of fiduciary duty, or how it would be such a breach. Debtors failed to allege a single WorldVentures Sales Representative or employee that Head has solicited. |
| "Further, by his failure to disclose material facts and potential conflicts of interest to WorldVentures' disinterested board of directors, Head has breached his duty of loyalty and usurped corporate opportunities." | Debtors failed to allege what facts are material that Head should have disclosed or when Head should have disclosed such facts. Debtors failed to allege what potential conflicts Head should have disclosed or when he should have disclosed such facts. Debtors failed to allege facts that Head has usurped a corporate opportunity. |
| "Head exerted heavy influence as WorldVentures' President and CSO to persuade World Ventures into entering these agreements with Seacret under false pretenses."[74] | Debtors failed to allege who Head exerted influence upon or persuaded to enter these agreements, how Head used "heavy influence." Debtors failed to allege facts describing what false pretenses Head used. |
| "Head spearheaded these agreements in his role as President, but refused to disclose Seacret's intent to open a competing travel business and to use the access afforded by these agreements against WorldVentures to its competitive advantage."[75] | Debtors failed to allege any facts to support the conclusion that Head "spearheaded" anything, much less the disclosure of WorldVentures' information to Seacret. Debtors have not alleged any facts supporting Head's "refusal" to disclose Seacret's intent to open a competing travel business. |
| "Following on the heels of this co-marketing agreement and despite its non- | Debtors failed to allege a single fact as to how Head facilitated the transfer of |

---

[74] Dkt. 1-1, ¶ 22.
[75] Dkt. 1-1, ¶ 25.

| | |
|---|---|
| solicitation provision, Head began facilitating the transfer of confidential information to WorldVentures Sales Representatives data to Seacret."[76] | information to Seacret, failed to allege when such acts occurred, how such facilitation occurred, or what information was transferred by Head. |
| "Head did not stop there. Head later pushed WorldVentures and Seacret's November 10, 2021 letter of intent for an asset purchase agreement of WorldVentures."[77] | Debtors failed to allege what Head did to "push" the LOI, who Head "pushed," or how such "pushing" resulted in Head disclosing any information to Seacret. |
| "Upon information and belief, Head ostensibly used the LSA as a pretext to lay the groundwork for his move to Seacret and their coordinated effort to take-over WorldVentures' travel business through recruitment of its entire downline and to re-create the travel business of Seacret."[78] | Debtors failed to alleged how Head used the LSA as a pretext. This allegation is solely made upon information and belief and not as a factual assertion. In fact, based on what is known in this case as to the waiver email, this conclusory allegation has no basis in fact. |
| "In short, after facilitating Seacret's access to the most vital competitive information regarding WorldVentures' business and days after WorldVentures filed bankruptcy, Head resigned to lead Seacret's "lifestyle" business designed to trade off WorldVentures' "brand," stealing WorldVentures' "global team" to do so."[79] | Debtors failed to allege any fact as to how Head facilitated Seacret's access to WorldVentures' "most vital competitive information," what information to which Head facilitated access, or when Head purportedly facilitated such access. |

32.    Debtors failed to allege a single fact to support these conclusory allegations. Debtors did not allege any facts as to what information Head used or disclosed to Seacret or anyone else outside of WorldVentures. Debtors failed to allege any fact as to when such use or disclosure occurred. Debtors failed to allege to whom specifically Head made any such disclosure.

33.    Additionally, Debtors must allege a plausible claim that they have been damaged by any such breach of fiduciary duty. As for the alleged damages on their breach of fiduciary duty

---

[76] Dkt. 1-1, ¶ 26.
[77] Dkt. 1-1, ¶ 27.
[78] Dkt. 1-1, ¶ 29.
[79] Dkt. 1-1, ¶ 34.

claim, Debtors allege the following conclusory allegations on the following chart with the Debtors'

allegations on the left and Head's response on the right:

| | |
|---|---|
| "Such actions have also resulted in a dissipation of WorldVentures' estate assets, and his actions have disrupted the orderly administration of WorldVentures' estate.  Thus, Head has breached his fiduciary duties owed to WorldVentures, its estate, and its creditors in the above-captioned bankruptcy proceeding."[80] | Debtors failed to allege a single fact as to how Head's actions have resulted in a dissipation of WorldVentures' estate assets.  Debtors failed to allege how Head's actions have disrupted the orderly administration of WorldVentures' estate.  To the contrary, in the expedited discovery, Debtors refused to allow Head to conduct any discovery on this claim. |
| "As a result of Head's intentional and willful breaches of his fiduciary duties, WorldVentures has suffered and continues to suffer irreparable harm to its business, its creditors, and its ability to effectuate a successful chapter 11 bankruptcy."[81] | Debtors failed to allege a single fact in support of this conclusion. Debtors failed to allege any fact that its financial welfare is deteriorating because of any use or disclosure by Head of any confidential information. |
| "Head's breaches of his fiduciary duty resulted in injury to WorldVentures and a benefit to Head."[82] | Paragraph 46 epitomizes Debtors' failure to comply with *Iqbal* and *Twombly*. |

34.    Debtors' allegation as to any breach of fiduciary duty related to the use or disclosure

of confidential information, solicitation of any employee or Sales Representative, or facilitation of

the LSA, does not meet the requirements of *Iqbal* and *Twombly*.  Count Two for breach of fiduciary

duty must be dismissed as a matter of law.

35.    As the Supreme Court stated in *Ashcroft v. Iqbal*, in determining whether a claim

is facially plausible, "[t]hreadbare recitals of the elements of the cause of action, supported by

mere conclusory statements, do not suffice."[83]  Because the only allegations related to solicitation

---

[80] Dkt. 1-1, ¶ 44.
[81] Dkt. 1-1, ¶ 45.
[82] Dkt. 1-1, ¶ 46.
[83] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556.

of employees or Sales Representatives are conclusory, Count Two for breach of fiduciary duty must

be dismissed as a matter of law.

**D.**     **Count One and Two should be dismissed because Debtors admit they gave confidential information to Seacret.**

36.     Counts One and Two must be dismissed as a matter of law because, on the face of

the Complaint, Debtors admit they voluntarily provided their confidential information to Seacret.

In the Complaint, Debtors allege the following:

- "Now, due to WorldVentures' and Seacret's execution of a co-marketing agreement, a letter of intent to purchase WorldVentures' assets, and a limited solicitation agreement, Seacret has gained access to WorldVentures' confidential and proprietary information as well as its downline travel sales network through false pretenses."[84]

- "Under the LSA, Seacret was allowed to use WorldVentures' exclusive network of Sales Representatives and sales network to sell Seacret's line of dietary, nutritional, and skincare products.  In exchange, Seacret agreed to pay WorldVentures a product sales-royalty based on the amount of Seacret products sold by WorldVentures' Sales Representatives."[85]

- "Under the LSA, WorldVentures gave Seacret access to WorldVentures' confidential and proprietary information, including "unfettered" access to one of WorldVentures' most critical revenue-generating assets: the Exigo database containing the entirety of WorldVentures' sales network."[86]

37.     The LSA provides that Seacret is allowed to solicit WV Marketing Sales

Representatives as follows:[87]

> "Seacret is immediately allowed to solicit any WVM Sales Representatives and enlist only such WVM Sales Representatives."

Section 1.3 of the LSA provides:

---

[84] Dkt. 1-1, ¶ 25.
[85] Dkt. 1-1, ¶ 28.
[86] Dkt. 1-1, ¶ 28.
[87] A true and correct copy of the Limited Solicitation Agreement is attached hereto as Exhibit A.

> "**WVM agrees that Seacret shall have unfettered access to WVM's database** (or other electronic materials and information) related to WVM's downline structure for the WVM Sales Representative. Seacret agrees that such information is confidential and will treat it as such pursuant to the terms of this Agreement." (emphasis added)

In fact in their Complaint, Debtors admit they voluntarily gave Seacret access to their confidential and proprietary information including the Exigo database. Debtors' claims that Head provided WorldVentures' confidential information to Seacret is belied by the fact that Debtors voluntarily provided the Exigo database, and other information Debtors claim to be confidential, to Seacret as provided by the terms of the LSA. On the face of their Complaint, the Debtors admit that "WorldVentures gave Seacret access to WorldVentures' confidential and proprietary information" including "unfettered" access to the Exigo database.[88] Assuming the facts of the Complaint in the most favorable light to the Debtors, the Complaint contains an admission that the confidential information was provided to Seacret by WorldVentures rather than by Head. In sum, Debtors have pled themselves out of court because they admit it was the Debtors themselves, rather than Head, who gave the confidential information to Seacret. Accordingly, Counts One and Two should be dismissed for failure to state a claim.

**E.    Count Three should also be dismissed because Debtors request for injunctive relief is solely based on Counts One and Two, which must be dismissed, and injunctive relief is a remedy not a cause of action.**

38.    In Count Three, the Debtors seek injunctive relief based on Counts Two and Three for breach of contract and breach of fiduciary duty. Specifically, the Debtors note "Head has and continues to improperly and unlawfully engage in the creation of a competing business at Seacret in violation of his Employment Agreement, the Non-Compete Provisions and his fiduciary duties

---

[88] See Dkt. 1-1, ¶ 28.

to the detriment of WorldVentures' business, its assets and its creditors."[89] As set forth above, the

Debtors have not stated a plausible claim for either breach of contract or breach of fiduciary duty.

According, Count Three should also be dismissed.

39.    A preliminary injunction is an extraordinary remedy which should only be granted

if the movant has clearly carried his burden of persuasion on all four factors.[90] Count Three must

be dismissed because injunctive relief is a remedy, and not a cause of action, and it is solely based

on Courts One and Two which must be dismissed.

40.    Additionally, because Debtors admit on the face of the Complaint that Debtors

provided the confidential information to Seacret which is a basis for Counts One and Two, it would

be futile for Debtors to amend their Complaint.  Accordingly, the Complaint should be dismissed

rather than amended.

## IV. ALTERNATIVELY, IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS, THE COURT SHOULD ORDER PLAINTIFFS TO FILE AND SERVE A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(E)

41.    Alternatively, to the extent that the Court does not grant the motion to dismiss, the

Debtors should be required to replead as required under Fed. R. Civ. P. 12(e).  Rule 12(e) provides

in pertinent part that:

> a party may move for a more definite statement of a pleading to which a responsive
> pleading is allowed but which is so vague or ambiguous that the party cannot
> reasonably prepare a response. The motion [for more definite statement] ... must
> point out the defect complained of and the details desired.

If a court is presented with an appropriate motion for more definite statement under Fed. R. Civ.

P. 12(e), the court "shall grant the motion and demand more specific factual allegations from the

---

[89] See Dkt. 1-1, ¶ 49.
[90] *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985).

plaintiff concerning the conduct underlying the claims for relief."[91]    The allegations in the

Complaint are so vague and ambiguous that Defendant cannot reasonably prepare a response.

42.    Here, the Complaint contains grossly insufficient factual allegations to support

Debtors' claims for breach of contract and breach of fiduciary duty.   Debtors failed to allege

sufficient facts to show Head breached any agreement or breached any fiduciary duty.   Debtors

failed to allege sufficient facts that Head disclosed any confidential information to Seacret.

Debtors failed to allege sufficient facts that Head solicited employees or Sales Representatives.

Debtors failed to allege sufficient facts that they have been harmed.

43.    Accordingly, the Complaint is so vague or ambiguous that Head cannot reasonably

prepare a response.[92]   As a result, if this Court does not dismiss Counts One, Two and Three

pursuant to Rule 12(b)(6), or if it dismisses only portions of the Complaint, the Court should order

Debtors to file and serve a more definite statement of their claims against Head in accordance with

Fed. R. Civ. P. 12(e).

### V. MOTION TO STRIKE PURUSUANT TO FED. R. CIV. P. 12(F)

44.    Fed. R. Civ. P. 12(f) provides that the court may strike from a pleading any

impertinent or scandalous matter, either on its own or on motion made by a party before

responding to the pleading.

45.    In paragraph 5 of the Complaint, Debtors allege:

Recognizing that Head was a failed leader and was incapable of leading sales
recovery and growth, WorldVentures hired a new sales executive to improve sales
and correct Head's failures.   Although Head was not terminated at the time, the
"writing was on the wall."   Head, knowing that it would be difficult to find new
employment due to his pending criminal indictment in Taiwan, began to
systematically enable Seacret to access WorldVentures' valuable database of sales

---

[91] *Thomas v. Independence Township*, 463 F.3d 285, 301 (3rd Cir. 2006).
[92] Fed. R. Civ. P. 12(e); *Thomas*, 463 F.3d at 301.

representatives, member, and employees and to establish and launch a competing membership-=based travel business, only to become its leader. Head's scheme further endangered WorldVentures' financial position, while simultaneously strengthening his own.

The purported Taiwan indictment is impertinent to this case and is solely intended by Debtors to be scandalous. Debtors failed to allege a single fact regarding the Taiwan case that bears on the claims in this case. Additionally, Debtors' allegation that Head "was a failed leader" is solely intended to harm Head's character and standing in the community. Debtors did not allege a single fact that Head was a "failed leader."

46.     Consequently, Head moves to strike paragraph 5 of the Complaint.

## CONCLUSION

47.     The Complaint should be dismissed because Debtors failed to state a claim upon which relief may be granted as a matter of law. Debtors' claims for breach of contract and breach of fiduciary duty based on allegations that Head used or disclosed confidential information, or solicited Sales Representatives, vendors and suppliers, are based on conclusory allegations, and not supported by factual allegations to give rise to plausible claims. Additionally, Debtors' claims for breach of contract and breach of fiduciary duty claims must be dismissed because, on the face of the Complaint, Debtors admit they provided confidential information to Seacret, and failed to allege that Head provided any confidential information to Seacret that Debtors did not otherwise voluntarily provide to Seacret. Finally, the Debtors failed alleged any harm on the face of the Complaint, but merely assert legal conclusions. For all these reasons, Head respectfully requests that the Court dismiss the Complaint and grant such other and further relief to which Head may be entitled.

Respectfully submitted,

SINGER & LEVICK, P.C.

By:      /s/Todd A. Hoodenpyle_____
       Todd A. Hoodenpyle
       State Bar No. 00798264
       hoodenpyle@singerlevick.com
       Michelle E. Shriro
       State Bar No. 18310900
       mshriro@singerlevick.com
16200 Addison Road, Suite 140
Addison, Texas 75001
Tel. (972) 380-5533
Fax (972) 380-5748

ATTORNEYS FOR DEFENDANT
KENNETH E. HEAD

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District and upon the following parties via electronic mail on April 2, 2021.

**Via Email:** slockhart@foley.com

Steven C. Lockhart
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201

      /s/Todd A. Hoodenpyle_____
      Todd A. Hoodenpyle